# SUPREME JUDICIAL COURT,

#### FOR THE

## COUNTY OF WORCESTER, SEPTEMBER TERM, 1873, AT WORCESTER.

---

##### PRESENT :

Hon. HORACE GRAY, Chief Justice.
Hon. JAMES D. COLT,
Hon. SETH AMES, } Justices.
Hon. MARCUS MORTON,
Hon. WILLIAM C. ENDICOTT,

---

## Inhabitants of Oakham *vs.* Ambrose P. Hall & another.

Assessors, knowing who 's in possession of real estate, cannot legally assess its tax to an " owner unknown ; " neither can they make such an assessment knowing, or having the means of knowing, in whom the record title is.

When the original assessment of a tax is valid, its reässessment is void.

A. being, and being known to the assessors of taxes to be, the occupant of land, refused to give them information concerning its ownership, but said it should be taxed to B., he being, and being known to them to be, the holder of the record title ; B. also refused to give them such information, but said it should be taxed to A. and afterward said it should be taxed to an " owner unknown." The tax having been one year assessed to A. and the next to B., and again the two taxes having been reässessed to an " owner un-known," and the land having been afterward sold for non-payment of the reässessed

taxes; in an action by the purchaser against A. and B. to recover the possession, *Held,* that they were not estopped to contest the validity of the reässessment and sale.

Under the St. 1862, *c.* 183, § 1, the adjournment of a tax sale for "a spell" on the same day is not such an adjournment as authorizes the collector to purchase on behalf of the town.

When in a writ of entry brought against one in possession of land and against the holder of the record title, the latter disclaims, his disclaimer does not vest his title in the de- mandant so as to enable him to maintain his writ against the former.

When a tenant in a writ of entry disclaims, and his plea is not traversed or falsified, judg- ment is to be given for him.

WRIT OF ENTRY against Ambrose P. Hall, and against · F. P. Goulding as assignee of the estate of John Hill, to recover six parcels of land situated in Oakham.

Goulding disclaimed as to all the tracts of land; Hall de- fended his right to the first, second and sixth described tracts, and disclaimed title as to the remainder.

At the trial in this court, before *Chapman,* C. J., it ap- peared that the lands demanded consisted of a home farm and the outlying wood lots; that the demandant claimed title under a sale for the non-payment of taxes; that the tenant Hall and his father, Percival Hall, had occupied the demanded premises from 1865 until the time of the sale; that the taxes on all the parcels for the year 1865 were assessed to Percival Hall; that for the years 1866, 1867, 1868, they were assessed to John Hill; that the taxes for all these years were unpaid; that in 1869 they were reässessed to "owner unknown;" that August 3, 1869, Joseph Fobes, collector of taxes for that year, demanded the taxes of Percival Hall and of Ambrose P. Hall; that more than fourteen days thereafter, the taxes remaining unpaid, he adver- tised that he should sell the property at public auction, on Sep- tember 27, 1869, for the taxes, and gave notice of the time and place of sale, by posting and otherwise, and pursuant to such notice and advertisement, September 27, 1869, sold the lots separately to the demandants for the amount of the taxes and intervening charges; that having received only one bid, which was withdrawn, and having adjourned the sale "a spell," and no other bid having been made at the adjourned sale, and having made a public declaration of the fact that no one had bid enough on either of the parcels to satisfy the taxes and charges thereon

and no bid having been received immediately thereafter, he gave public notice that he should, and that he then and there did, purchase each of the lots for and on behalf of the town of Oakham for the amount of the taxes and charges thereon; that each of the parcels was accordingly struck off to the demandants, and that Fobes gave them the deed dated September 27, 1869, under which they claimed at the trial.

Fobes duly recorded a proper and sufficient affidavit of a disinterested witness to the posting of the notice with a copy thereof.

The demandants introduced evidence of the election and qualification of collectors of taxes and assessors, and votes showing the annual appropriations, and votes for the assessment and collection of taxes at legal town meetings for the years 1865, 1866, 1867 and 1868, and evidence of the election and qualification of a collector of taxes and of assessors for the year 1869, and put in evidence the warrant and vote for the collection of taxes for that year and the list of taxes accompanying it, among which were those for which the land in controversy was sold.

It further appeared that both the tenant Hall and Percival Hall declined to give the assessors for the year 1865 any information concerning the ownership of the land or to whom it should be taxed; that after it was set to Percival Hall, both the Halls told the collector of taxes for that year that it ought to have been taxed to John Hill; that they both declined to pay the taxes; that in 1866, 1867, 1868 and 1869 the tenant Hall told the assessors for those years respectively to tax it to John Hill · that John Hill told the collector of taxes for the year 1866, 1867 and 1868 that it belonged to the Halls to pay it; that Hill told the assessor and collector of taxes for the year 1869 that it ought to have been taxed to " owner unknown; " and that thereafter the assessor for 1869 reässessed the taxes to " owner unknown," and committed them to the collector for that year with a warrant for their collection.

The assessors for each year knew, or had the means of knowing, in whom the record title to the premises was, and also knew who the occupants were.

The demandants also put in evidence the following deeds, re-corded in the Worcester county Registry of Deeds, viz :

Percival Hall to Cheney Hatch, conveying all the land except the Bell lot, dated January 27, 1864, recorded same day, book 678, page 89.

Ambrose P. Hall to Cheney Hatch, conveying the Bell lot, dated January 27, 1864, recorded same day, book 678, page 90.

Cheney Hatch to Ambrose P. Hall, conveying all the land, dated December 1, 1864, recorded December 6, 1864, book 695, page 108.

Ambrose P. Hall to John Hill, conveying all the land, dated December 1, 1864, recorded December 6, 1864, book 695, page 110, and containing a reference to the deed from Cheney Hatch to Ambrose P. Hall.

The above facts appeared upon the evidence put in by the de-mandants. The tenants put in no evidence.

Upon the foregoing facts the defendant Hall contended that the demandants were not entitled to recover. And the case was reserved for the consideration and decision of the full court.

*T. L. Nelson & S. Utley*, for the demandants.

*F. A. Gaskill*, (*G. F. Verry* with him,) for the tenants.

WELLS, J.* The demandants claim title under a sale, in 1869, for non-payment of the taxes for the four previous years, re-assessed in 1869, on the ground that the original assessments were invalid. Upon the report it is found that during the whole time until the sale the record title was in John Hill, and the occupa-tion or possession in Percival and Ambrose P. Hall; that it was assessed in 1865 to Percival Hall, and the other three years to Hill; that the reässessment was to " owner unknown; " and that the assessors for each of said years knew who were the occu-pants of said premises, and knew, or had the means of knowing, in whom was the record title.

We are of opinion that the reässessment, and consequently the sale and conveyance to the demandants were invalid : first, be-cause, upon the facts stated, the taxes could not properly be as-

---

* This case was argued at the last term.

sessed to "owners unknown;" second, because the original assessments were not invalid. The law requires that "taxes on real estate shall be assessed, in the city or town where the estate lies, to the person who is either the owner or in possession thereof on the first day of May." Gen. Sts. *c.* 11, § 8.

The power to make a reässessment of any tax is derived wholly from the statute, and extends only to that "which is invalid by reason of any error or irregularity in the assessment." Gen. Sts. *c.* 11, § 53. An attempt to reässess a tax when the original assessment was not thus invalid, is without authority and void, and no title can be acquired by means of it. *Inglee* v. *Bosworth*, 5 Pick. 498. *Pond* v. *Negus*, 3 Mass. 230. *Burr* v. *Wilcox*, 13 Allen, 269.

The refusal of the Halls and of Hill to give the assessors information concerning the ownership of the land, and their statements that the taxes ought to be assessed otherwise than they were, were not such as may reasonably be supposed to have misled the assessors, and do not constitute an estoppel *in pais.*

The sale is void also by reason of non-compliance with the provisions of the St. of 1862, *c.* 183, § 1. That statute authorizes the collector to make the declaration of purchase on behalf of the town, only after "the sale shall have been adjourned from day to day." There was no such adjournment in this case, but only for "a spell" on the same day.

A question was raised at the argument, whether the disclaimer of the assignee of Hill, who is joint defendant, would operate to vest his title in the demandant so as to enable a recovery to be had upon the title thus acquired by the pleadings in the case.

A disclaimer is a renunciation of title and right of possession. If not falsified, it defeats the action. But the demandant is thereupon entitled to the possession of the land, and the party pleading the disclaimer is forever estopped by the judgment from denying his right of possession. If, however, the plea is falsified, the tenant is nevertheless bound by his disclaimer, and the demandant may have judgment against him. *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad Co.* 104 Mass. 1, 10. The judgment upon a disclaimer, whether for or against the de-

mandant, is conclusive in his favor upon title, as between the parties. It is sometimes said to enure as a conveyance to the demandant of whatever title or right the party disclaiming had in the land. Jackson on Real Actions, 98. *Prescott* v. *Hutchinson*, 13 Mass. 439. This must be intended, we think, only as between the parties and their privies. A judgment for the demandant can hardly operate to establish any issue or proposition inconsistent with the allegations of the declaration, which are that the tenant hath unjustly and without judgment disseised him. A disclaimer purports only the disavowal of title or right in the supposed tenant. It is difficult to see how any new title or source of title can be derived by a demandant from such pleadings.

Under the feudal law, it is true, a disclaimer by a tenant, at the suit of his lord, worked a forfeiture of his estate, which was immediately thereupon revested in the lord. Jackson on Real Actions, 97. But that result followed necessarily from the renunciation and consequent destruction of the particular estate. So at common law, a disclaimer in a writ of entry operates to extinguish whatever estate, adverse to the demandant, the tenant may have had in fact at the time of pleading the disclaimer. If that estate was carved out of the freehold or fee claimed by the demandant, the extinguishment of the particular estate would of course, to that extent, enlarge the estate and title of the demandant.

On the other hand, when two persons are joined as tenants in a writ of entry, a disclaimer by one is said to enure " as a release, to pass all his estate to his co-tenant." Jackson on Real Actions, 98. Stearns on Real Actions, 222. *Prescott* v. *Hutchinson*, 13 Mass. 439. The reason, doubtless, is, that strictly the action will lie against two, only on the ground that they are either joint tenants or coparceners. If they are so in fact, a renunciation of title by one, and its consequent extinguishment, would of itself clothe the other with the whole title, leaving him sole tenant of the whole land so held. If they are joint disseisors, they are joint tenants by disseisin, and the same result would follow a disclaimer by one, so far as their estate

by disseisin is concerned. By joining them in the action, the demandant avers them to be joint tenants. Jackson on Real Actions, 72. Stearns on Real Actions, 204. If either of them has any estate or title, in sole tenancy or several tenancy, by right, the renunciation of such title by disclaimer would simply extinguish it.

This view of the nature and operation of a disclaimer will, as we think, afford a solution of the various, and apparently inconsistent effects ascribed to it. The demandant, having no title, can acquire none by the disavowal and extinguishment of his title by one of the tenants joined in the writ.

The result is that there must be judgment for both tenants. That in favor of Goulding, assignee of Hill, will be rendered upon his disclaimer, which must be treated as a plea in abatement, Gen. Sts. *c.* 134, § 12, and will estop him from claiming the estate against the demandant. The disclaimers of Hall will have the same effect as to the parcels of land to which they apply. The form of pleading is irregular and unauthorized. *Wheelwright* v. *Freeman,* 12 Met. 154. *Fisk* v. *Fisk,* 12 Cush. 150. *Richards* v. *Randall,* 4 Gray, 53. *Johnson* v. *Rayner,* 6 Gray, 107. But no point in regard to the pleadings is presented upon the report, and as the demandant shows no title to the lands not disclaimed, and has neither traversed nor falsified the disclaimers, there must be                *Judgment for both tenants.*