CITY OF BOSTON *vs.* QUINCY MARKET COLD STORAGE AND WAREHOUSE COMPANY.

Suffolk.    March 4, 1940. — December 30, 1942.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Taxation,* Of real estate: assessment, exemption, foreclosure of right of redemption, tax title. *Land Court,* Foreclosure of right of redemption from tax title, Appeal. *Real Property,* Ownership. *Statute,* Construction. *Words,* "Shall."

A decision of the Land Court, upon a petition for foreclosure of the right of redemption from a tax title, that the title was valid and that the case stand for further hearing on the matter of redemption was proper practice.

Upon an appeal from a decision of the Land Court on a petition for foreclosure of the right of redemption from a tax title, that the title was

valid and that the case stand for further hearing upon the matter of redemption, the question of the validity of the title came before this court as a separable matter.

The word "shall" as used in statutes, although in its common meaning mandatory, may be construed as permissive and directory in order to effectuate a legislative purpose.

The provisions of § 11 of G. L. (Ter. Ed.) c. 59 in the form appearing in St. 1936, c. 92, while permitting assessing officers to assess real estate to the record owner thereof although they knew that the title was in a grantee under an unrecorded deed, did not require them to do so.

Land owned by a grantee under an unrecorded deed from the Commonwealth was not exempt from taxation as property of the Commonwealth.

A tax upon land described in an unrecorded deed properly was assessed upon the grantee under § 11 of G. L. (Ter. Ed.) c. 59 as appearing in St. 1936, c. 92.

PETITION, filed in the Land Court on May 3, 1939.

The case was heard by *Fenton, J.*

*B. Morton,* for the respondent.

*S. S. Dennis,* Assistant Corporation Counsel, (*M. Corman* with him,) for the petitioner.

FIELD, C.J.  The city of Boston brought this petition in the Land Court to foreclose the right of redemption under a tax title acquired by the city in the year 1937 for the tax assessed for the year 1935 to the respondent, Quincy Market Cold Storage and Warehouse Company, as the owner of certain real estate in the city of Boston.  G. L. (Ter. Ed.) c. 60, § 65, as appearing in St. 1938, c. 305.  The case was heard in the Land Court on a statement of agreed facts. The respondent contends that the tax title was not valid. The trial judge filed a decision embodying findings of fact and rulings of law in which he ruled that the assessment of the tax for the year 1935 (and also the assessments of the taxes for the years 1936, 1937, 1938 and 1939, certified in accordance with the provisions of G. L. (Ter. Ed.) c. 60, § 61, as appearing in St. 1936, c. 93, § 1) was "proper and valid," found the tax title valid and ordered the case to stand for further hearing on the matter of redemption.  From this decision the respondent appealed to this court.  G. L. (Ter. Ed.) c. 185, § 15;  c. 231, § 96, § 142, as amended by St. 1935, c. 318, § 7.  *Boston* v. *Lynch,* 304 Mass. 272, 273–274.

These facts appear:  For many years prior to 1928 the

real estate assessed belonged to the Commonwealth. In October, 1928, the Commonwealth executed and delivered a deed — dated October 9, 1928 — of the real estate in question to the respondent. This deed has never been recorded. No other conveyance of the real estate has been made except the tax deed dated April 26, 1937, and recorded May 12, 1937, upon which this petition is based. All taxes on the real estate from the year 1929 to the year 1934, inclusive, were assessed to the respondent and paid by it. The taxes for the year 1935 and subsequent years were assessed to the respondent. "Taxes for the year 1935 were not paid by the respondent and the property was sold for nonpayment as stated in the tax deed to the city of Boston, and the city continues to be the holder of said tax deed. Demand was duly made, the tax sale was duly advertised, and all further provisions of law in respect to tax sales were complied with."

The respondent makes no contention — and properly, on the facts found, could make no contention — that on January 1, 1935 — as of which date the tax in question was assessed — the respondent was not the owner in fact of the real estate assessed. The unrecorded deed from the Commonwealth to the respondent as between the parties thereto conveyed to the respondent the legal title to the real estate. *Smythe* v. *Sprague*, 149 Mass. 310, 312. *Anthony* v. *New York, Providence & Boston Railroad*, 162 Mass. 60, 61. The respondent, however, contends, in substance, that for purposes of taxation, on the facts found, on January 1, 1935, the Commonwealth and not the respondent was the "owner" of such real estate, since the Commonwealth was the owner of record thereof, with the consequences that such real estate was exempt from taxation as "property of the commonwealth" under G. L. (Ter. Ed.) c. 59, § 5, Second, and that even apart from this exemption the tax could not rightly have been assessed upon the respondent as the owner in fact of this real estate when the respondent was not the owner of record thereof. This contention cannot be sustained.

The governing statute in force during the year 1935, and during the year 1936 until St. 1936, c. 92, became effective, was G. L. (Ter. Ed.) c. 59, § 11, as amended by St. 1933,

c. 254, § 29 (which merely changed the date as of which taxes were to be assessed from April first to January first), providing that "Taxes on real estate shall be assessed, in the town where it lies, to the person who is either the owner or in possession thereof on January first, and the person appearing of record, in the records of the county, or of the district, if such county is divided into districts, where the estate lies, as owner on January first, even though deceased, shall be held to be the true owner thereof, and so shall the person so appearing of record under a tax deed not invalid on its face. . . . Except as provided in the three following sections, mortgagors of real estate shall for the purpose of taxation be deemed the owners until the mortgagee takes possession, after which the mortgagee shall be deemed the owner."

From Rev. Sts. c. 7, § 7, to G. L. (Ter. Ed.) c. 59, § 11, before its amendment by St. 1936, c. 92, the statutes have provided, in language that has not varied in any material particular, that taxes upon real estate shall be assessed "to the person who is either the owner or in possession thereof" on the tax date — now January first. See Gen. Sts. c. 11, § 8; Pub. Sts. c. 11, § 13; R. L. c. 12, § 15. But in St. 1881, c. 304 — a statute dealing primarily with the taxation of mortgaged real estate — by § 3 thereof it was provided that, "For the purposes of assessing and collecting taxes, the persons appearing of record as owners of real estate shall be held to be the true owners thereof." In Pub. Sts. c. 11, § 13, this provision was included in the same section as the provision that taxes should be assessed "to the person who is either the owner or in possession thereof." And the provision above quoted from St. 1881, c. 304, § 3, with some modification in phrase if not in effect, has been retained in subsequent statutes (see St. 1889, c. 84; R. L. c. 12, § 15; St. 1902, c. 113; St. 1909, c. 490, Part I, § 15) and was incorporated in G. L. c. 59, § 11, and now appears in G. L. (Ter. Ed.) c. 59, § 11, as above set forth. The inclusion in G. L. (Ter. Ed.) c. 59, § 11, as amended, of the provision limiting "of record" to "records of the county, or of the district, if such county is divided into districts, where the

estate lies," resulted from an amendment to R. L. c. 12, § 15, by St. 1902, c. 113, although a similar provision had previously been incorporated in the statute (see St. 1889, c. 84) but was omitted in the revision. The provision expressly applying the rule with respect to the owner of record to a case where such owner is deceased first appeared in St. 1889, c. 84, § 1, and the provision relating to a person appearing to be the owner of record "under a tax deed not invalid on its face" was incorporated in the statute by St. 1915, c. 237, § 23. The general provision with respect to the taxation of mortgaged real estate goes back to Rev. Sts. c. 7, § 7, although the exception to this general provision originated in St. 1881, c. 304. The statute governing the present case is to be interpreted in the light of its history.

Prior to St. 1881, c. 304, the "owner" of real estate to whom it could be assessed was undoubtedly the owner in fact thereof, that is, the person having legal title to such real estate. *Miner* v. *Pingree,* 110 Mass. 47. *Worcester* v. *Boston,* 179 Mass. 41, 49. Yet, though there has never been express statutory authority for assessing real estate in terms to an unknown owner, such assessments both before and after the passage of St. 1881, c. 304, have been recognized as valid if the assessors with the exercise of reasonable diligence could not obtain trustworthy information as to its ownership. *Desmond* v. *Babbitt,* 117 Mass. 233, 234. *Stone* v. *New England Box Co.* 216 Mass. 8, 11. *McDonough* v. *Everett,* 237 Mass. 378, 381. See also *Oakham* v. *Hall,* 112 Mass. 535, 538–539.

Moreover, before the passage of St. 1881, c. 304, though there was no express statutory authority for assessing real estate to the owner of record thereof, it was held in *Tucker* v. *Deshon,* 129 Mass. 559, 566–567, that an assessment to the owner of record of real estate, title to which had been transferred by such owner of record by an unrecorded deed, was valid where the municipality had no notice of such transfer of title. This decision was rested upon the provisions of the recording statute — then Gen. Sts. c. 89, § 3 — that no transfer of real estate is "valid and effectual against any person other than the grantor, and his heirs and devisees,

and persons having actual notice thereof, unless it is made by a deed recorded." This decision was rendered on October 23, 1880, and St. 1881, c. 304, was passed in the following May, and it is to be assumed that the Legislature passed the statute with this decision in mind. *Worcester* v. *Springfield*, 310 Mass. 217, 220. It is to be assumed further that, although a purpose of the provision of St. 1881, c. 304, § 3, that for the purpose of assessing and collecting taxes "the persons appearing of record as owners of real estate shall be held to be the true owners thereof," may have been to embody expressly in the comprehensive statutes relating to taxation the principle decided in the *Tucker* case that real estate might be assessed to the owner of record thereof if the municipality has no notice of its ownership in fact, at least one purpose of that provision was to correct what may well have been thought to be a defect in the preëxisting law in that an assessment of a tax on real estate to the owner of record thereof would be invalid if the municipality had notice that such owner of record was not the owner in fact. It is a recognized canon of statutory interpretation that, if reasonably possible, a statute is to be so interpreted that it will remedy the mischief or imperfection in preëxisting law apparently intended to be remedied thereby. *Duggan* v. *Bay State Street Railway*, 230 Mass. 370, 374. *Brown* v. *Robinson*, 275 Mass. 55, 57. *Tilton* v. *Haverhill*, 311 Mass. 572, 577. The apparent mischief or imperfection in preëxisting law disclosed by the *Tucker* case would be remedied by authorizing the assessment of such real estate to the owner of record of real estate, even though the municipality had notice that this owner of record was not the owner in fact. This, at least, is the effect of the provision here in question incorporated in St. 1881, c. 304, § 3, and continued in later statutes. *Saftel* v. *Brooks*, 254 Mass. 516, 518. And this is its effect even if assessment of real estate to the owner of record thereof is merely permissive. No reason appears, for the purpose of remedying this mischief or imperfection, for making it mandatory that real estate assessed to the "owner," as distinguished from the "person . . . in possession," should be made to the owner of record rather than

to the owner in fact. And no other purpose of limiting assessment to an "owner" to assessment to an owner of record is apparent. Compare, however, the provision for assessing mortgaged real estate when the mortgagee is not in possession in St. 1881, c. 304, §§ 1, 2, 3, and subsequent statutes. See now G. L. (Ter. Ed.) c. 59, §§ 12, 13, 14.

On the other hand, a limitation of assessment of real estate when made to the owner to assessment to the owner of record of such real estate would constitute a radical change in the statutory method of assessing real estate. If it had been the intention of the Legislature to make such a radical change, the simple and direct method of doing so obviously would have been to substitute the words "owner of record" for the word "owner" in the provision that taxes on real estate should be assessed "to the person who is either the owner or in possession thereof." The failure of the Legislature to use the obvious, simple and direct method of making such a radical change at least raises doubt whether this change was intended if the actual language used is reasonably susceptible of being interpreted as making a less radical change. The legislative intention in enacting the statute must be ascertained, "not alone from the literal meaning of its words, but from a view of the whole system of which it is but a part, and in the light of the common law and previous statutes on the same subject." *Armburg* v. *Boston & Maine Railroad,* 276 Mass. 418, 426. "A matter may be within the letter of a statute and not come within its spirit, if the matter is beyond the mischief intended to be reached or if to include it would require a radical change in established public policy or in the existing law and the act does not manifest any intent that such a change should be effected." *Commissioner of Corporations & Taxation* v. *Dalton,* 304 Mass. 147, 150. An interpretation of St. 1881, c. 304, § 3, as making it mandatory that an assessment to an "owner" of real estate be made to the owner of record thereof appears to be "beyond the mischief intended to be reached" by the statute and "would require a radical change in established public policy . . . . [and] in the existing law."

The burden of taxation of real estate naturally rests upon

the owner in fact thereof, by reason of his ownership of such real estate, unless he has made an agreement with some other person or persons to bear this burden. *Walker* v. *Whittemore*, 112 Mass. 187, 189. *Boston Molasses Co.* v. *Commonwealth*, 193 Mass. 387, 391. The real estate of the owner in fact is charged with a lien for the payment of the tax thereon irrespective of the person to whom the tax is assessed, though the person to whom it is assessed is primarily liable therefor. G. L. (Ter. Ed.) c. 60, § 37, as appearing in St. 1934, c. 169. (See also St. 1935, c. 269; St. 1936, c. 146; St. 1941, c. 84.) *Dunham* v. *Lowell*, 200 Mass. 468, 469. *Equitable Trust Co. of New York* v. *Kelsey*, 209 Mass. 416, 418. *Massachusetts Hospital Life Ins. Co.* v. *Shulman*, 299 Mass. 312, 314–315. Such a lien has been one of the features of our tax system since 1824. *Hayden* v. *Foster*, 13 Pick. 492. *Dunham* v. *Lowell*, 200 Mass. 468, 469. *Curtiss* v. *Sheffield*, 213 Mass. 239, 242–246. But statutes providing to whom a tax on real estate shall be assessed and who shall be liable for its payment in the first instance do not determine upon whom the final liability is cast. *Boston Molasses Co.* v. *Commonwealth*, 193 Mass. 387, 388–389. These statutes are for the convenience of the assessing and collecting officers.

It has long been the law that, in general, if the person to whom a tax on real estate is assessed pays such tax, he may recover the amount so paid from the person upon whom the final burden thereof is cast. Thus, though from Rev. Sts. c. 7, § 7, to G. L. (Ter. Ed.) c. 59, § 11, before its amendment by St. 1936, c. 92, it has been provided that the tax on real estate might be assessed to the "person . . . in possession" thereof, throughout the same period it has been provided substantially as now in G. L. (Ter. Ed.) c. 59, § 15, that if "a tenant paying rent for real estate is taxed therefor, he may retain out of his rent the taxes paid by him, or may recover the same in an action against his landlord, unless there is a different agreement between them." See Rev. Sts. c. 7, § 8; Gen. Sts. c. 11, § 9; Pub. Sts. c. 11, § 17; R. L. c. 12, § 20; St. 1909, c. 490, Part I, § 20. It can hardly be doubted that the word "landlord" in this statute includes the owner in fact. And apparently, if

there were no such statute, there would be such a right of recovery at common law. *Boston Molasses Co.* v. *Commonwealth*, 193 Mass. 387, 391. The principle, however, that where a tax upon real estate is assessed to and paid by a person upon whom the final burden is not cast, such person may recover the amount so paid from the person upon whom such final burden is cast, is of more general application. *Phinney* v. *Foster*, 189 Mass. 182, 188. *Callahan* v. *Broadway National Bank of Chelsea*, 286 Mass. 473, 476. See G. L. (Ter. Ed.) c. 60, § 60. See also *Kites* v. *Church*, 142 Mass. 586, 588. As between the owner of record of real estate and the owner in fact thereof under an unrecorded deed, the final burden of the tax, in the absence of an agreement to the contrary, rests upon the owner in fact. Assessment in such a situation to the owner in fact would, therefore, avoid circuity of action, and such avoidance would furnish a reason for permitting assessment of a tax on real estate to the owner in fact thereof.

In the light of the considerations stated relating to the history of the governing statute and the apparent purpose of the change therein effected by St. 1881, c. 304, § 3, the provision that "the person appearing of record . . . [to be the owner of real estate] shall be held to be the true owner thereof" is not to be interpreted as mandatory in the sense that it requires that an assessment of a tax on real estate to the "owner" thereof be made to the owner of record thereof and precludes assessment to the owner in fact of the real estate, unless this interpretation is clearly required by the letter of the statute. The respondent urges that the word "shall" as used in the statute is mandatory. Undoubtedly it is mandatory in the sense that if a tax on real estate is assessed to "the person appearing of record" as the owner thereof, such person must be "held to be the true owner thereof," that is, the owner thereof in fact. But it does not follow necessarily that the provision is mandatory in the sense that a tax on real estate assessed to the "owner" thereof must be assessed to the owner of record thereof and cannot be assessed to the owner in fact thereof. "The word 'shall' as used in statutes, although in its common meaning

mandatory, is not of inflexible signification and not infrequently is construed as permissive or directory in order to effectuate a legislative purpose." *Swift* v. *Registrars of Voters of Quincy*, 281 Mass. 271, 276. "The word 'shall' may be construed as permissive where the subject matter requires." *Murray* v. *Edes Manuf. Co.* 305 Mass. 311, 313. The statutory provision in question must be interpreted as a part of a general system of taxation, including provisions for assessment and provisions for collection, in connection with other statutory provisions. *Curtiss* v. *Sheffield*, 213 Mass. 239, 242.

Statute 1881, c. 304, in which the provision now in question originated, contained in § 4 thereof the following provision: "Every sale or taking of real estate for unpaid taxes shall be deemed to be in the name of the owner or owners thereof, if the proceedings of assessment, sale, or taking shall be made in the name of one or more of the persons who appear as record owners of such estate at the date of assessment." The use of the word "if" in this provision clearly indicates that an alternative to assessment "in the name of one or more of the persons who appear as record owners" was contemplated — not necessarily only the alternative of assessment to "the person . . . in possession." Reading this provision with the provision in § 3, the combined provisions naturally mean that "if" a tax is assessed to "one or more of the persons who appear as record owners," "the persons appearing of record as owners of [the] real estate shall be held to be the true owners thereof." And the permissive nature of the provision permitting assessment of taxes upon real estate to owners of record thereof is made even more clear by the form in which the provision of § 4, herein referred to, appeared in the codification of the tax laws in St. 1909, c. 490, Part II, § 57, and now appears in G. L. (Ter. Ed.) c. 60, § 56: "The assessment, sale or taking may be made in the name of one or more of the record owners at the date of assessment, and if so made, shall, subject to section forty-three [not here material], be deemed to be in the name of the owner thereof." Here the word "may" clearly indicates that assessment of taxes to owners of record is per-

missive but not mandatory and limits the effect of the word "shall" in G. L. (Ter. Ed.) c. 59, § 11, as amended. We conclude, therefore, that the statutory authority conferred by said § 11 to assess taxes upon real estate to the "owner" thereof permits assessment to the owner in fact thereof as under the statute in force prior to St. 1881, c. 304, even though he is not "the person appearing of record" to be the owner of such real estate.

The similarity in the language of G. L. (Ter. Ed.) c. 59, § 11, as amended, with respect to a "person appearing of record" to be the owner of real estate being "held to be the true owner thereof" to the language in the same section relating to the taxation of mortgaged real estate, that, "Except as provided in the three following sections, mortgagors of real estate shall for the purpose of taxation be deemed the owners until the mortgagee takes possession, after which the mortgagee shall be deemed the owner," does not require a different conclusion. This provision with respect to the taxation of mortgaged real estate has been a part of the statutes relating to taxation in substantially the same form — apart from the exception — at least since Rev. Sts. c. 7, § 7. The exception referred to (see G. L. [Ter. Ed.] c. 59, §§ 12, 13, 14) originated in St. 1881, c. 304 (see St. 1882, c. 175), and was enacted with the purpose of avoiding double taxation. It permits the assessment of taxes upon mortgaged real estate in part to the mortgagor and in part to the mortgagee, treating them as joint owners for the purpose of taxation until the mortgagee takes possession. (§ 14.) But it was pointed out in *Worcester* v. *Boston*, 179 Mass. 41, 49, that the statutory provisions for the exception to the general rule applicable to the taxation of mortgaged real estate "are rarely regarded, and the result intended by them has been practically reached by a failure on the part of the assessors to assess to the mortgagee either as real or personal property the sum represented by the mortgage." See now G. L. (Ter. Ed.) c. 62, § 1 (a) Third.

The statutes relating to the taxation of mortgaged real estate deal specifically with a subject matter of a peculiar nature. Under our law the mortgagee has the legal title

to the mortgaged real estate, subject, however, to defeasance, and in this aspect the *mortgagee* is the "owner" of such real estate. *Ewer* v. *Hobbs*, 5 Met. 1, 3. *Harlow Realty Co.* v. *Cotter*, 284 Mass. 68, 70. But as was said in the *Ewer* case, "in all other respects, until foreclosure, when the mortgagee becomes the absolute owner, the mortgage is deemed to be a lien or charge, subject to which the estate may be conveyed, attached, and in other respects dealt with, as the estate of the mortgagor." And as was said in *Delano* v. *Smith*, 206 Mass. 365, 369, quoting from *Dolliver* v. *St. Joseph Fire & Marine Ins. Co.* 128 Mass. 315, 316, "it has long been settled in this Commonwealth that, as to all the world except the mortgagee, a mortgagor is the owner of the mortgaged lands, at least till the mortgagee has entered for possession." In this aspect the *mortgagor* is the "owner" of the mortgaged real estate. And doubtless, according to popular understanding, a mortgagor — at least while in possession — is the "owner" of the mortgaged real estate. In substance the mortgagor and the mortgagee are joint owners, each of them having an interest in the real estate, and they are so treated, until the mortgagee takes possession, for the purpose of the taxation of the mortgaged real estate when the exception to the general rule relative to such taxation is followed. G. L. (Ter. Ed.) c. 59, § 14. In a sense, therefore, the mortgagee and the mortgagor are each the owner in fact of the mortgaged real estate. And the purpose of the general provision relating to the taxation of such real estate is to determine to which of the owners in fact of such real estate the tax thereon is to be assessed in accordance with the principle in our system of taxation that ordinarily real estate is to be assessed as a whole irrespective of the ownership of various interests therein. *Crocker-McElwain Co.* v. *Assessors of Holyoke*, 296 Mass. 338, 344–345, and cases cited. *Paine* v. *Assessors of Weston*, 297 Mass. 173, 174–175.

A statute designed to determine to which of the owners in fact of real estate the tax on such real estate is to be assessed may well be interpreted as mandatory (see *Davis* v. *Boston*, 129 Mass. 377, 378), and yet a statute in similar

terms designed to provide, for the convenience of assessing officers, for the assessment of taxes upon real estate to the owner of record thereof upon the fiction that such owner of record is the "true owner" thereof, be interpreted as merely permissive so far as the making of an assessment is concerned. The purposes of the two statutes are materially different, notwithstanding the resemblance in form. Recording acts ordinarily permit resort to this fiction with respect to ownership of real estate when it is not known to be untrue. See G. L. (Ter. Ed.) c. 183, § 4 (see also St. 1941, c. 85); *McCarthy* v. *Lane*, 301 Mass. 125, 128–129. Doubtless the statutory provision now under consideration *permits* assessing officers, in assessing taxes upon real estate to the "owner" thereof, to resort to this fiction even if it is known by them to be untrue, but in our opinion, for reasons herein stated, it does not *compel* them to resort thereto. On the contrary, notwithstanding this provision, they may assess such real estate to the "true owner," the owner in fact, thereof.

The statutory changes embodied in G. L. (Ter. Ed.) c. 59, § 11, as amended by St. 1933, c. 254, § 29, made since St. 1881, c. 304, § 3, have little, if any, bearing upon the question here decided. At any rate they have no tendency to show that the conclusion here reached is incorrect.

. The question now under consideration has never been decided by this court. . Expressions upon this question, however, have been contained in some of the opinions of the court, but these expressions were not necessary to the decision of these cases and such expressions are not consistent. In *Southworth* v. *Edmands*, 152 Mass. 203, decided after the enactment of St. 1881, c. 304, the validity of an assessment of a tax on real estate to one Rodney Edmands, made before the passage of that statute, was in question. The record title to the real estate at the date of the assessment was in one Strong, but Mrs. Edmands held an unrecorded deed from him of which the assessors had no notice. Edmands and his wife with their minor children occupied the premises. The court in a majority decision held that the tax was properly assessed to Edmands on the ground that he was the person in possession. The question whether the tax

could rightly have been assessed to Mrs. Edmands was not involved. The majority of the court said: "The record title was in one William G. Strong, and he was the person taxable as owner, and not Mrs. Edmands, who held an unrecorded deed from him, of which the assessors had no notice. Gen. Sts. c. 11, § 8. *Forster* v. *Forster*, 129 Mass. 559, 566 [herein cited as *Tucker* v. *Deshon*, 129 Mass. 559, 566–567]. St. 1881, c. 304, § 3. Pub. Sts. c. 11, § 13. . . . The tax could not properly have been assessed to Mrs. Edmands as the person in possession. [page 206] . . . If they [the assessors] had notice from the record that Strong was the owner, they were not bound to inquire if there was not an unrecorded deed from him to Mrs. Edmands; and if they had had notice of such a deed, they may well have doubted whether they could have assessed the tax to her as owner, while the right to assess to the occupant in possession was clear. It has not been argued that the taxes could have been assessed to Mrs. Edmands, except as owner, or that they could have been assessed to any one as in possession, unless to Edmands." (Page 208.) A minority of the court, however, took the position that the tax was not properly assessed to Edmands on the ground that, since Mrs. Edmands was the owner of the real estate, the possession thereof could not be deemed to be in her husband. (Page 209.) It was added, however, with respect to Pub. Sts. c. 11, § 13 — which included the provisions of St. 1881, c. 304, § 3 — providing that real estate was to be assessed "to the person who is either the owner or in possession thereof," that "The statute declares what shall constitute ownership within the meaning of this section, and substantially adopts the provision of the Pub. Sts. c. 120, § 4, that an unrecorded deed shall not be valid against third parties who have had no notice of it. To be subject to taxation for real estate, one must have such ownership, or must be in actual possession. . . . The assessors may always safely assess to the person who appears of record as owner, or to the person in actual possession." (Page 213.) In *McDonough* v. *Everett*, 237 Mass. 378, the validity of a tax title was in question. The assessment had been made to owners unknown. The court

said: "Legally land cannot be assessed to owners unknown if the assessor by reasonable diligence can learn who is the owner in fact, the owner of record, or the person in actual possession of the land to be taxed. . . . A search of the records would have disclosed quickly and readily that the record title" to the real estate in question was in certain named persons, and consequently "the assessment to owners unknown was invalid." (Page 381.) In *Assessors of Weston v. Trustees of Boston College,* 296 Mass. 399, a tax upon real estate was assessed to the Trustees of Boston College, a charitable corporation. The real estate stood on the records in the name of this corporation. It does not appear that this corporation was not also the legal owner in fact of the real estate. But this real estate was held in trust for another charitable corporation, The Society of Jesus of New England, and was occupied on the tax date by the latter corporation. Exemption of the real estate was claimed under G. L. (Ter. Ed.) c. 59, § 5, Third, as real estate owned and occupied by a charitable corporation for the purposes for which it was incorporated. The court held that the real estate was not so exempt on the ground that the "governing section does not exempt real estate merely occupied by the charitable institution" and that the words "owned . . . by" in the statute could not rightly include "held in trust for." The court, however, said that by G. L. (Ter. Ed.) c. 59, § 11, "the person appearing of record in the proper registry of deeds as the owner of real estate is deemed to be the true owner for purposes of taxation," that the assessment was "properly made to the Trustees of Boston College under said § 11 as owner of record," and that, "By the provision of § 11 of said c. 59, tax officials are required to proceed in assessing taxes upon the two open and notorious facts of possession and record title. . . . The exemption can be made out only upon the basis of the occupancy of the real estate and the record title." (Pages 402–403.) The question was not involved whether any different result would have followed if the Trustees of Boston College had been the owner in fact of the real estate and not the owner of record thereof. These diverse expressions of opinion do

not require a different conclusion in the present case from that which has been reached as a matter of interpretation of the governing statute.

The result is that the tax upon the real estate in question assessed for the year 1935 to the respondent was properly assessed if the real estate in question was not exempt from taxation. It was not exempt from taxation unless it was within the exemption provided by G. L. (Ter. Ed.) c. 59, § 5, Second, of "property of the commonwealth." But it was not "property of the commonwealth." The respondent was the owner in fact thereof although not the owner of record thereof. *Smythe* v. *Sprague*, 149 Mass. 310, 312. *Anthony* v. *New York, Providence, & Boston Railroad*, 162 Mass. 60, 61. The unrecorded deed from the Commonwealth to the respondent was effective to convey the legal title in such real estate to the respondent as between the Commonwealth and the respondent and all persons having actual notice of such deed. G. L. (Ter. Ed.) c. 183, § 4. Whether the question of the legality of an assessment of a local tax on real estate can be said to arise between the person assessed and the Commonwealth, or between such person and the municipality or the assessing officers (see *Tucker* v. *Deshon*, 129 Mass. 559, 567; *Assessors of Quincy* v. *Cunningham Foundation*, 305 Mass. 411, 415), in any event, on the facts found, the real estate here in question was the property of the respondent and not the "property of the commonwealth," apart, at least, from the provisions of G. L. (Ter. Ed.) c. 59, § 11, as amended, that the "person appearing of record . . . as owner [of real estate] . . . shall be held to be the true owner thereof."

This statute, however, relates only to the assessment of taxes, although a similar provision in G. L. (Ter. Ed.) c. 60, § 56, relates to the "assessment, sale or taking." So far as this statute has any bearing upon exemption, such bearing is indirect or derivative. Since, as we hold, this statute for the purpose of assessment is merely permissive and leaves it open to taxing officers to assess real estate to the owner in fact thereof, it can have no broader effect for the purpose of exemption. As the respondent was the "owner" of the real

654 BOSTON *v.* QUINCY MARKET COLD STORAGE CO. [312

estate to whom the tax thereon properly could be assessed and actually was assessed, it was also the owner thereof for the purpose of determining whether the respondent when so assessed was entitled to exemption. For this purpose as well as for the purpose of assessment the real estate was the property of the respondent and not the "property of the commonwealth." This conclusion is supported by the principle that an "exemption from taxation is an extraordinary grace of the sovereign power, and is to be strictly construed. It must be made to appear plainly, either by the express words or necessary intendment of the statute," *Milford* v. *County Commissioners of Worcester*, 213 Mass. 162, 165 (see also *Redemptorist Fathers* v. *Boston*, 129 Mass. 178, 180; *Animal Rescue League of Boston* v. *Assessors of Bourne*, 310 Mass. 330, 332), and by the nonexistence of the usual reason for the exemption of "property of the commonwealth" "'that property held and used for the benefit of the public ought not to be made to share the burden of paying the public expenses.' *Collector of Taxes of Milton* v. *Boston*, 278 Mass. 274, 277." *Assessors of Quincy* v. *Cunningham Foundation*, 305 Mass. 411, 417. The ground, if any, for exemption in the present case is purely technical. The respondent, however, is entitled to the benefit cf a.1 exemption on such a technical ground if the statutory language so requires. We think that it does not. The case differs from *Corcoran* v. *Boston*, 185 Mass. 325, where real estate was held to be exempt as property of the Commonwealth. In that case legal title to the real estate assessed had not passed from the Commonwealth to the person assessed, and the Commonwealth — not the person assessed — was the owner in fact thereof.

In view of the conclusion reached it is unnecessary to consider whether the tax could have been assessed to the respondent on the ground that the respondent was the "person . . . in possession" thereof.

It follows that the ruling of the trial judge that the assessment for the year 1935 was "proper and valid" was right and that there was no error in his finding that "the tax title [was] valid."

The trial judge, however, ruled also that the assessments of taxes for the years 1936, 1937, 1938, and 1939 were "proper and valid." The basis of the tax sale was the tax assessed for the year 1935. But G. L. (Ter. Ed.) c. 60, § 61, as finally amended by St. 1936, c. 93, § 1, provides in part as follows: "Whenever a town shall have purchased or taken real estate for payment of taxes the lien of the town on such real estate for all taxes assessed subsequently to the assessment for payment of which the estate was purchased or taken shall continue, and it shall be unnecessary for the town to take or sell said real estate for nonpayment of said subsequent taxes, costs and interest; and on redemption from such taking or purchase, said subsequent taxes, costs and interest shall be paid to the town, and the payment shall be made a part of the terms of redemption, except that if any of the said subsequent taxes have not been certified by the collector to the treasurer to be added to the tax title account, then redemption may be made by payment only of the amount of the tax for which the estate was purchased or taken and of such subsequent taxes as shall have been so certified, together with costs and interest." It is clear from the record that the taxes for the years from 1936 to 1938, inclusive, were properly certified in accordance with the requirements of this statute. And though it is not so clear that the tax for the year 1939 was so certified, no contention is made to the contrary. The question whether the assessments of the taxes for the years subsequent to 1935 were "proper and valid" perhaps technically relates to the matter of redemption rather than to the matter of the validity of the tax title. It was ordered that the case stand for further hearing upon the matter of redemption. This was proper practice, and the matters of the validity of the tax title and of redemption are so far separable that in this situation appeal lies from the decision as to the validity of the tax title. *Boston* v. *Lynch*, 304 Mass. 272, 273–274. Though the question of the propriety and validity of the assessments of taxes for the years subsequent to 1935 may technically relate to the matter of redemption rather than to the matter of the validity of the tax title, there may well be a practical

advantage in deciding this question at the hearing upon the validity of the tax title. This practice was followed in the present case, apparently without objection. The entire case was within the jurisdiction of the Land Court which could have dealt with it as a whole upon the first hearing. We see no sound reason why that court could not deal with the question of the propriety and validity of the assessments of the subsequent taxes at the first hearing, leaving only other questions relating to redemption to be decided at a later hearing.

The ruling of the trial judge that the assessments of taxes for the years 1936 to 1939, inclusive, were "proper and valid" was right for the reasons already stated with respect to the tax assessed for the year 1935. The governing statute applicable to the tax for the year 1936 was the same as that applicable to the tax for the year 1935. By St. 1936, c. 92, however, the provision of G. L. (Ter. Ed.) c. 59, § 11, as amended, authorizing assessment of real estate to the "person . . . in possession thereof" was eliminated, but by St. 1939, c. 175, it was restored to a limited extent. These statutory changes did not affect the assessments of the taxes for the years 1937, 1938 and 1939, for these taxes were assessed to the "owner" of the real estate and consequently such assessments were "proper and valid" for the reasons herein stated with respect to the assessment of the tax for the year 1935.

*Decision affirmed.*