FRANK L. HARDY *vs.* MATTHEW L. JAECKLE & others
(and a companion case[1]).

Nantucket.    December 4, 1975. — December 23, 1976.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, & WILKINS, JJ.

*Taxation,* Real estate tax: assessment, tax taking, foreclosure of tax
title. *Real Property,* Foreclosure of tax title.

Under G. L. c. 59, § 11, a town's board of assessors was required to
exercise reasonable diligence to determine the owner of property by
resort to records in the appropriate registry of deeds and registry
of probate but was not required to inquire outside of those records
to determine ownership. [578-580]
The facts that a board of assessors, in attempting to determine the own-
ers of certain property for purposes of G. L. c. 59, § 11, did not make
inquiry outside the public records, did not pursue private researches,
and did not research the probate records covering the nineteen
original owners or their heirs for the period from 1821 to 1966,
neither compelled nor permitted a finding that the board failed to
exercise reasonable diligence to determine the owners appearing of
record in 1966. [580-583]

PETITIONS filed in the Land Court on January 27, 1970.
The cases were heard by *Sullivan,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Robert F. Mooney (Andre R. Sigourney* with him) for
the plaintiff.

*Charles A. Goglia, Jr.,* Town Counsel, for the town of
Nantucket.

*Gerald H. Abrams,* for Nantucket Land Council, Incor-
porated, amicus curiae, submitted a brief.

QUIRICO, J.    These are petitions under G. L. c. 60, § 65,
to foreclose the rights of redemption of the owners of and

_____

[1] The companion case was also brought by Frank L. Hardy against
Matthew L. Jaeckle and others.

all other persons interested in two parcels of land taken by the town of Nantucket (town) for the nonpayment of taxes which had been assessed to John Doe, a fictitious person. The tax titles acquired by the town pursuant to these takings were then assigned to Frank L. Hardy, the plaintiff.

After hearing, a judge of the Land Court, by a single decision, ruled that the John Doe assessments and the ensuing tax takings were invalid and that the plaintiff acquired no title by the assignments. The plaintiff appeals from a decision that the petitions be dismissed. G. L. c. 185, § 15.[2]

For reasons hereafter stated we reverse the decision dismissing the petitions, hold the assessments to John Doe valid, and remand the cases to the Land Court for determination of the validity of the assignments and for entry of appropriate decrees in accordance with this opinion.

We summarize the relevant facts and the proceedings below. On January 1, 1966, the town's board of assessors (board) assessed the two parcels of land which are the subject of these petitions to John Doe, a fictitious person. The real estate valuation list for that year described one parcel as containing 32,400 square feet with a valuation of $50 and the other as 45,000 square feet with a like valuation. The 1966 taxes on each parcel were $2.75. On March 1, 1967, the town took the parcels for nonpayment of taxes. On April 14, 1967, the tax liens acquired by the town were assigned to the plaintiff, without public notice, pursuant to G. L. c. 60, § 52.[3] After adding interest, expenses and costs to the delinquent taxes, the plaintiff paid $19.18 for the assignment of the larger parcel and $15.18 for the assignment of the smaller one, or a total payment of $34.36.

---

[2] The appeals were originally entered in the Appeals Court and, thereafter, they were ordered transferred to this court for direct appellate review. G. L. c. 211A, § 10 (A).

[3] At the time the assignment was made, public notice was not required. The relevant statute has since been amended to require any assignments of tax titles to be made to the highest bidder after a public auction. G. L. c. 60, § 52, as amended by St. 1973, c. 249.

In 1970, the plaintiff brought these petitions to foreclose the tax liens. Matthew Jaeckle was named in both petitions as a part owner of the equity of redemption. There is nothing in the record before us which gives any reason or otherwise sheds any light on why Jaeckle was named as a defendant or described in the petitions as "Part owner of equity." He filed neither an answer nor an appearance, and did not participate in any way in the proceeding to foreclose his right of redemption, if any. The only other defendant named in the petitions was "John Doe (a fictitious person)" and consistent with the fiction he was described as of "Nantucket, Mass. Part owner of equity."

Pursuant to G. L. c. 60, § 66, the Land Court selected an official examiner whom it "authorized and directed to search the public records and examine the title relative to the land described in said petition[s] sufficiently to determine the persons who may be interested in said petition[s], and to file ... [a] report ... concluding with a list of all such persons and the nature of their interests." The examiner filed a similar report on each petition stating that the persons or parties interested and entitled to notice were: (a) the town which was probably interested in a road running through the property, (b) Jaeckle who was originally named as a defendant in the petitions, and (c) the nineteen persons and estates who had obtained title to the property as tenants in common under a division or set-off of common lands by an instrument recorded in the "Proprietors Book of Plans" in 1821, and the heirs and assigns of such nineteen persons and estates. The report makes no mention of any interest created or acquired in the land in question, or of any public record relating thereto, subsequent to the 1821 division or set-off, except for the tax takings involved in this proceeding. Other than the names of Jaeckle and the town, the report lists no names of interested parties other than those named in the 1821 record.

Appearances and answers were filed by several individuals, some of whom claimed to be descendants of persons named in the division or set-off in 1821. All the

individual defendants withdrew from the proceedings before they were terminated.[4] Although the town filed an answer in each petition, the answers were for the limited purpose of requesting that the court determine the validity of the town's procedure of making John Doe assessments which are to be discussed below. Since both the plaintiff and the town contended that the assessments were valid, there was ultimately no party in interest contesting the petitions.[5]

The plaintiff's cases were presented solely on documentary evidence which included the board's valuation lists for 1966 and 1967, the tax title accounts, and the instruments of taking and the assigments of the tax titles by the town to the plaintiff. It also included documentary evidence concerning the history of land title problems peculiar to the island of Nantucket over the last three centuries. This history showed that, from the earliest settlement of the island, large tracts of land were held in common ownership by the Proprietors of the Common and Undivided Lands of the Island of Nantucket for the purpose of sheep grazing. The ownership rights in the common land became fragmented by inheritance into hundreds if not thousands of owners, each of whom owned a very small fractional undivided interest in the land. In 1813 this court held that owners of the undivided land could petition the court for

---

[4] One of the individual defendants, before withdrawing from the proceeding, testified and also introduced an exhibit tending to show that she owned an interest in the land in question. The exhibit consisted of a deed from her father dated March 28, 1974, purporting to release to her all his interest in the land covered by the two tax takings in question. The witness claimed to be a descendant of three of the nineteen persons named in the record of the 1821 division. Because this defendant withdrew from the proceeding, we give no effect to the deed or to her testimony relating to her claimed interest.

[5] Nantucket Land Council, Incorporated, filed a motion for leave to file an amicus curiae brief before this court, which was granted. Mass. R. A. P. 17, 365 Mass. 864 (1974). The motion states that it is a nonprofit corporation organized pursuant to G. L. c. 180 and that its primary objectives are to encourage the proper utilization of land in Nantucket and to preserve the natural resources of the island. In its two briefs, the council has argued that both the John Doe assessments and the assignments of tax liens were invalid in these cases.

partition and have portions of the land set off to individual ownership. *Mitchell* v. *Starbuck*, 10 Mass. 5 (1813). Thereafter large portions of the island were set off to private ownership.

After hearing, the judge stated in her written decision that "[t]he basic question to be decided by the Court is whether an assessment of property to John Doe, a fictitious person, and a taking after nonpayment of the taxes so assessed is a valid tax taking pursuant to which the owner's right of redemption may now be foreclosed." She then noted that "[a]t the time of the assessments in question it had long been held that land might be assessed as the property of an unknown person if the assessors were unable to learn by reasonable inquiry who the owner was," citing as authority for that proposition our decisions in *Streeter* v. *Worcester*, 336 Mass. 469, 471 (1957), *Stone* v. *New England Box Co.*, 216 Mass. 8, 11 (1913), and *Desmond* v. *Babbitt*, 117 Mass. 233, 234 (1875).[6] She then said that though there appeared "to be no authority specifically treating of the validity of what has come to be known as [a] 'John Doe' assessment ... it is obvious, however, that this is an assessment to a fictitious person ... [with] no difference of substance between it and an assessment to a person unknown." We agree with that reasoning and holding.

Although the judge concluded that the John Doe assessments on the two parcels in question were the legal equivalent of assessments to owners unknown, she nevertheless decided that they were invalid because of her finding that the board had failed to exercise reasonable diligence by which it "would have been able to ascertain the name of at least one tenant in common to whom the premises

[6] The tax takings at issue in these cases were made in 1967. Thereafter the Legislature expressly provided for assessments of real estate to owners unknown by St. 1971, c. 286, which added the following paragraph to G. L. c. 59, § 11: "Whenever the commissioner deems it proper he may, in writing, authorize the assessment of taxes upon real property to persons unknown, provided that the assessors certify to the commissioner that they cannot by reasonable diligence ascertain the name of the person appearing of record."

should have been assessed pursuant to the provisions of G. L. c. 59, § 11." We now consider whether the judge applied the correct legal test in arriving at this decision. We hold that she did not.

General Laws c. 59, § 11, as appearing in St. 1939, c. 175, provides first that "[t]axes on real estate shall be assessed, in the town where it lies, to the person who is the owner on January first." It then further prescribes "who is the owner" for such purpose by saying that (a) "the person *appearing of record*, in the records of the county, or of the district, if such county is divided into districts, where the estate lies, as owner on January first, even though deceased, shall be held to be the true owner thereof" (emphasis supplied); and (b) "provided, that whenever the commissioner deems it proper he may, in writing, authorize the assessment of taxes upon real estate to the person who is in possession thereof on January first, and such person shall thereupon be held to be the true owner thereof for the purposes of this section." These cases appear to have been tried and decided on the basis that there was no person "in possession" of the two parcels when they were assessed as of January 1, 1966, and therefore we are concerned only with the statutory requirement that the land be assessed to "the person appearing of record" on that date.

The provision that taxes be assessed to "the persons appearing of record as owners of real estate" was first made a part of our statutes by St. 1881, c. 304, § 4. It was later made more specific by St. 1902, c. 113, § 1, which inserted the present language referring to "the person appearing of record, in the records of the county, or of the district, if such county is divided into districts, in which the estate lies." The qualification of the original words "the person appearing of record" by the addition of the words "in the records of the county, or of the district, if such county is divided into districts," indicates a legislative intent that the record owner be determined, if possible, by resort to records in the appropriate registry of deeds. This appears obvious in view of the provisions of G. L. c. 36, § 1, estab-

lishing three registry districts in two counties (Berkshire and Bristol) and two registry districts in each of three other counties (Essex, Middlesex, and Worcester). For a statement of the history of St. 1881, c. 304, § 4, see *Boston v. Quincy Mkt. Cold Storage Co.,* 312 Mass. 638, 642-644 (1942), and cases cited therein.

Our opinion in *Assessors of Boston v. John Hancock Mut. Life Ins. Co.,* 323 Mass. 242, 245 (1948), refers to St. 1881, c. 304, § 3, as "the very statute which first made the records conclusive" for assessment purposes. We also said in that opinion, with reference to G. L. c. 59, § 11: "It is plain beyond doubt that, under the first sentence of this section, where an estate is assessed to an 'owner' as distinguished from a mortgagee, the assessors, although not obliged to rely upon the state of the local records, are ordinarily justified in doing so, whatever the actual facts may be outside the records, and even if they know facts which show that the title is not in the person assessed." *Id.* at 244. We held in that case that, where the official registry records showed a mortgage and the mortgagee had taken possession, the assessors properly assessed the property to the mortgagee even though they had learned from unofficial records maintained at the registry that the mortgagor had filed a petition in a United States District Court for reorganization and that court had ordered the mortgagee to relinquish its possession.

Although, as noted above, it appears that in the statutory reference to "the person appearing of record ... as owner" (G. L. c. 59, § 11) the word "record" is to the record in the appropriate registry of deeds, this court has held that the board may also be charged with knowledge of the content of records in the appropriate registry of probate. In *Tobin v. Gillespie,* 152 Mass. 219, 221 (1890), involving the predecessor to the present G. L. c. 59, § 16, relating to assessment of property of a deceased person, we said: "We are of opinion that, when it appeared of record that the real estate of a deceased person had become vested in devisees, who are not his heirs, under a will duly probated and allowed, the taxes could not properly

be assessed to the heirs of the deceased under the [statute in question]." In the case of *Conners* v. *Lowell,* 209 Mass. 111, 119 (1911), we said, citing the *Tobin* case: "Assessors are charged with notice of what may be found upon the probate records in determining whether to make an assessment to the heirs or devisees of one deceased. . . . [Citation omitted.] There is no hardship in holding the tax collector to the same investigation if necessary, in ascertaining the name of an heir." In *Fuller* v. *Fuller,* 228 Mass. 441, 444 (1917), we said: "The [tax] collector also was charged with constructive notice of the probate records which show the delinquent taxpayer's death, the admission of his will to probate and the appointment of the executrix."

The law applicable to the facts of these cases as of the date of the assessments in question may be summarized as follows. There then being no person in possession, G. L. c. 59, § 11, required the board to assess the property in question to the "owner" and that meant the owner "appearing of record" as determined by resort to the records in the appropriate registry of deeds and registry of probate. The board was required to exercise reasonable diligence to try to determine the owner from those sources, but if the board could not thereby determine the owner it could lawfully assess the property to "persons unknown," or, as it did in this case, assess it to the fictitious "John Doe." There was not then, and there is not now, any requirement that the board inquire beyond those records to determine the owner; and the assessments cannot be held invalid solely because of the board's failure to inquire outside the registry records for that purpose.

We next consider whether the judge properly applied the law summarized above in determining whether the board properly assessed the land in question to the legal equivalent of owners unknown. We hold that she did not.

There was evidence of "the problems which affect the title to much real estate in Nantucket" particularly as the result of the practice over several centuries of diffuse ownership of minute fractional interests, sometimes called "sheep commons," in large tracts of land. The judge ap-

parently accepted that evidence as true and correct and she found that "[m]any of these problems have continued to the present time." She then added: "As appears from the report of the examiner appointed by the Court, the land in each petition is located in Share 3 of the North Pasture, and in 1821 was set off to nineteen persons or their heirs. [A footnote listing the names is omitted.] An examination of the list of owners shows that even in 1821 uncertainty existed as to who the heirs of certain of the tenants in common were, so it seems evident that difficulties existed in 1966 in determining all the heirs or devisees of the original tenants which may now number several thousand." There is the further undisputed fact that after the recording of the instrument described above in 1821, no other instrument relating to the ownership of this land was filed in the registry of deeds until 1967 when the two tax takings in question were recorded. We believe that the judge of the Land Court was required to take judicial notice, and we take judicial notice, of the enormity of the problem faced by the board, or by any other persons, in determining the owners "appearing of record" of the land in question 146 years after the creation of the multiple tenancies in common described above, without a single document relating thereto having been recorded in the registry of deeds during that period.

It was the duty of the judge to determine whether, on the basis of the undisputed facts including the state of the registry records, the subsidiary facts found by her, and the facts of which she should have taken judicial notice, the board could have determined who any of the owners of the property "appearing of record" were when they made their 1966 assessments thereof to unknown owners. The judge appears instead to have applied the test of whether the board could have determined who any of the owners were by inquiries, investigation or research outside the records of the registries of deeds and probate. Indicative of her application of that test is the following language from her decision, after her findings of the continued existence of the many problems with Nantucket land titles: "When this

has been said, however, the Court is faced with the obvious conclusion that there must have been *at least one actual tenant* in common, known to the assessors, and not a fictitious person, to whom the assessment might have been made.... The list of names ... [of the nineteen persons or their heirs to whom the land was set off in common in 1821] is replete with names which figure prominently in Nantucket history throughout the years intervening since 1821 and which are still well represented on the island. In a community as small, tightly knit and self contained as Nantucket (at least during ten months of the year), the Court refuses to believe that with the exercise of reasonable diligence the assessors would have been unable to find one actual owner. In fact there was no evidence introduced at the hearing as to any efforts at all made by the [b]oard ... to determine the owners. It follows therefore ... that the assessment in each case is invalid and that the tax taking based thereon is in turn of no force and effect."

The fact that there were persons living in Nantucket in 1966 whose names were the same as those of some of the 1821 common owners did not require the board to inquire of them whether they owned any interest in the land in question. There is no requirement of law that it do so. If the board were to rely on information not "appearing of record" and assess land to one who is neither the actual owner nor the person in possession, the tax and any resulting taking for nonpayment thereof would be of questionable validity. *McDonough* v. *Everett,* 237 Mass. 378, 381 (1921). *Oakham* v. *Hall,* 112 Mass. 535, 538-539 (1873). There are also persuasive considerations of public policy, rooted in the fiscal needs of municipalities and in the public necessity for good and reliable record titles to real estate, which militate against requiring assessors to determine the ownership of land from information outside the appropriate public records.

In these cases the board did not make inquiry outside the public records, did not pursue private or other unofficial genealogical and historical researches, and did not re-

search the probate records covering the nineteen original owners or their heirs for the period from 1821 to 1966. Yet these facts neither compel nor permit a finding that the board did not exercise reasonable diligence to determine the owners "appearing of record" in 1966 for the purpose of assessing the two lots in question at $50 each, with a tax on each of $2.75. We hold instead that in the particular circumstances of these cases the board could not, by the exercise of reasonable diligence, have determined who any of the owners appearing of record were in 1966. Accordingly we conclude that the board acted lawfully in assessing the land to the equivalent of owners unknown and that the takings of the two parcels for nonpayment of the 1966 taxes were valid.

After concluding that the two 1966 assessments and the resulting takings for nonpayment of taxes were invalid, the judge said that she "need not consider the question as to whether the assignment [of the tax titles] to the petitioner also was invalid even though on its face it complied with the then statutory requirements." It is not clear from the record before us whether, and if so, how or by whom, the validity of the assignments was put at issue. The issue was argued in the plaintiff's brief but not in the defendants'. It was argued in the brief of the amicus, but that argument is (a) more on the wisdom rather than on the validity of disposing of land acquired by tax takings, and (b) based in large part on facts which were not before the Land Court and are not in the appellate record. There is nothing now before us on this issue which we can review. If the issue was properly raised in the Land Court, it should be decided there on the basis of the law then applicable thereto. See G. L. c. 60, § 52, as appearing in St. 1936, c. 392, § 1.

Accordingly, we reverse the decision and the cases are remanded to the Land Court for the purpose of (a) determining the issue of validity of the assignments of the two tax titles to the plaintiff, if that issue was properly raised, and (b) entering final decrees consistent with this opinion

and with the determination, if any, by the Land Court on the validity of the assignments.

*So ordered.*