TOWN OF LANCASTER *vs.* ADRIENNE M. FOLEY & others.[1] March 24, 1983. The town, on July 3, 1980, filed a petition for registration (G. L. c. 185) of land taken by it many years earlier for nonpayment of taxes. Part had been taken in 1963 from predecessors in title of the Foleys (see note 1) by judicial foreclosure ("1963 foreclosure") under G. L. c. 60, §§ 65, 68 & 69. Another portion was the subject of administrative proceedings (concerning land of low value, G. L. c. 60, §§ 79 to 80B) involving a predecessor of the Wells group (see note 1). These proceedings were completed in 1945 ("1945 proceedings").

After a report upon the registration petition by a Land Court examiner, an order of notice on that petition, duly published, was issued returnable on April 13, 1981. This named as parties the members of the Wells group which represented the taxpayer whose interests had been the subject of the administrative 1945 proceedings. In accordance with Land Court practice, the notice did not mention the Foleys, whose predecessor's land had been acquired in the judicial 1963 foreclosure. Other parties who seasonably filed answers were defaulted on July 14, 1981, for nonappearance. After further proceedings, an order for decree was entered by a Land Court judge on December 1, 1981.

From January 11, 1982, to March 8, 1982, more than eight months after the return day, four separate motions were filed (one by the Foleys and three by members of the Wells group) for leave to file late answers in the registration proceedings. Either directly or in an accompanying draft

[1]The appellants fall into two groups. The first group (hereinafter the Foleys) include Adrienne M. Foley, Edward Foley, and Joan A. Day. The other group (hereinafter the Wells group) includes Richard W. Beuttel, Marjorie J. Woodin, Eleanor R. Hills, Margaret Booth, George Henry Wells, Herbert M. Wells, Clifford C. Wells, Donald A. Wells, Richard C. Wells, Raymond L. Wells, and Phyllis F. Wells.

of answer or in affidavits, each such motion asserted alleged defects in the 1945 proceedings or in the 1963 foreclosure. Extended claimants' arguments, set out in the record, were heard on at least three different days. Each motion was denied by the Land Court judge as matter of discretion. The present appeal, during which the order for decree has been stayed, is by the persons filing the denied motions.

The judge, in her discretion, could deny the motions if the appellants did not show that the lateness of their answers was due to "excusable neglect." See Mass.R.Civ.P. 6(b)(2), 365 Mass. 747 (1974); *Old Colony Bank & Trust Co.* v. *Tacey Transp. Corp.*, 10 Mass. App. Ct. 825 (1980), and authorities there cited; Smith & Zobel, Rules Practice § 6.4 (1974 & Supp. 1981). See also the discretionary powers granted to the Land Court by G. L. c. 185, § 41. In the motions, there was only slight effort to establish facts, as to events after the registration petition was filed, tending to excuse the failure to file timely answers. See 4 Wright & Miller, Federal Practice and Procedure § 1165 (1969 & Supp. 1982). Instead, the appellants relied largely upon alleged defects in the older tax title proceedings. We sustain the Land Court judge's conclusion that, in the circumstances, the delay in filing answers was not excusable, taking into account pertinent considerations. See, e.g., *Berube* v. *McKesson Wine & Spirits Co.*, 7 Mass. App. Ct. 426, 430-435 (1979), stating (at 430) that delinquent persons must establish that their claim "has merit." The judge could conclude that each appellant was guilty of such serious laches in testing long completed tax title proceedings as to preclude consideration of his or her claims.

The town officials in 1980 reasonably could suppose that the town owned by tax title part of the land which it sought to register. It had changed position (at least to the extent of expenses of registration) in attempting to make available, for sale to a developer of a shopping center, tax title land acquired many years earlier when of slight value. The shopping center project had received much local publicity. The potential increase in land value unquestionably led to the appellants' sudden interest in the land.

The alleged defects in the 1963 foreclosure were not asserted by the Foleys or their predecessor for about nineteen years. The judge was not required to place much weight on vague statements in affidavits that two Foleys went to the Lancaster town hall in the early 1950's to offer to pay the taxes on land in Lancaster "but were refused . . . the opportunity to do so by an unknown official agent . . . of the town." These efforts did not lead to other action before the tax title was foreclosed in 1963. No further effort after the early 1950's to pay taxes (known by the affiant Foleys to have been overdue) has been shown. The judge could reasonably regard the delay as laches prejudicial to the town because of the increased difficulties of proof after such a long period. See *Hebda* v. *O'Brien*, 6 Mass. App. Ct. 661, 664 (1978), and cases cited. The period,

indeed, approached that required for acquisition of title by adverse possession (see G. L. c. 260, § 21) although the record does not show actual occupation and use of the land by the town. The judge also reasonably could treat the Foley's claims as barred by the expiration of one year after the judicial 1963 foreclosure. G. L. c. 60, § 69A (and see §§ 64 & 69). See Park, Real Estate Law §§ 789-792, especially at 229-230 (1981 & ' Supp. 1982). See also Nichols, Taxation in Massachusetts 415-425 (3d ed. 1938 and Cohen & Pike Supp. 1962).

The town's taking of the two parcels of land dealt with in the 1945 proceedings (in 1939, assessed for an aggregate of $300 on which a tax of $11.28 was due) was not the subject of any action by any of the Wells group for almost thirty-seven years. The record shows no effort during that period to pay taxes on that land. The Wells group has initiated (cf. G. L. c. 60, § 68) no definitive steps (other than somewhat vague remarks of counsel in oral argument) about payment (if allowed to answer late) of all back taxes owed plus interest. The recent case of *Guaranty Mortgage Corp.* v. *Burlington*, 385 Mass. 411, 415-420 (1982), has done much to sustain the finality of administrative tax title proceedings with reference to land of low value where as here there has been notice of the proceedings by publication. As the *Burlington* opinion pointed out (at 419), the justification for permitting somewhat informal procedures in such cases is that "a taxpayer should know that the . . . town will eventually sell his property if the taxes are not paid." The judge in her discretion was justified in concluding that, in the face of complete taxpayer inaction, no equitable considerations required her to regard as a meritorious claim any alleged defects in the 1945 proceedings.

There was in the present case no proof of action by the town lulling the Wells group claimants or their predecessor in title "into a state of inattentiveness" as in *Bartevian* v. *Cullen*, 369 Mass. 819, 823-824 n.5 (1976). There the owner moved within four years after the purported tax taking and sale to assert her interest.

In view of the serious laches, we need not consider whether the description in the 1941 tax collector's deed of the two rural woodland parcels was adequate. It appears to have been generally consistent with the town tax records and more specific than the listing in the probate inventory of one of the Wells group's predecessors. The description has not been shown to have been misleading. Compare *McHale* v. *Treworgy*, 325 Mass. 381, 384-386 (1950).

In passing upon whether the Foleys' and the Wells group's long inaction amounted to laches, the Land Court judge reasonably could consider statements in their motions that they had not asserted any defects in the 1945 proceedings and the 1963 foreclosure until persuaded to do so by a third party who had agreed to pay their expenses. The stated circumstances showed the slight significance which the Foleys and the Wells group theretofore had attached to their claims. Obviously these claims

might have been more persuasive if asserted within a reasonable period after 1945 and 1963. See Park, *supra* §§ 793-794. On the present record, there is no occasion to consider whether there was any violation of G. L. c. 221, § 41. Cf. *Pupecki* v. *James Madison Corp.*, 376 Mass. 212, 219-220 (1978), and cases cited.

The orders denying the claimants leave to answer late are affirmed as a reasonable exercise of the Land Court judge's discretion.

*So ordered.*

*Willard Ide Shattuck, III*, for Richard W. Beuttel & others.

*Mark B. Schmidt (Salvatore F. DiMasi with him)* for Adrienne M. Foley & others.

*Louis N. Levine* for the plaintiff.