MARGARET H. KRUEGER & others[1] *vs*. WILLIAM J. DEVINE & others.[2]

Dukes County. March 14, 1984. — July 23, 1984.

Present: BROWN, KASS, & SMITH, JJ.

*Taxation,* Real estate: tax taking, tax title, tax deed. *Real Property,* Tax title.

A description in a 1928 notice of tax taking of a parcel of land in Edgartown giving the owner's name and referring to the property as "land at South Beach consisting of a tract of 39 acres" was not, in the circumstances, so indefinite as to make invalid a subsequent sale of the land for the taxes assessed. [400-402]

A 1928 tax collector's deed which recited the information required by G. L. c. 60, § 45, and its predecessor statute, including the name of the person on whom demand for payment of taxes had been made, was sufficient evidence of a valid demand, even though the deed failed to state the date of the demand and the address to which demand was made and no tax collector's affidavit was filed in connection with the tax taking. [402]

Notice of a tax taking in 1928 of a parcel of land in Edgartown was held to be sufficient. [402-403]

Recitation in a 1928 tax deed that a parcel of undeveloped land was sold for discharge and payment of the unpaid taxes, with interest, legal costs, and charges, together with an earlier recitation that the unpaid taxes were $32.76, satisfied the requirement of G. L. c. 60, § 45, and its predecessor statute that the tax deed state "the price for which the land was sold." [403]

---

[1] Jon D. Schneider, trustee, Cameron J. Cook, Stephen C. Gentle, Dorothy P. Gentle, Dominic Meo, III, Andrew P. Houlahan, Daniel J. Mullen, Lina S. Tepper, Marilyn Barrett, Dorothy W. Moeller. All the plaintiffs trace their titles to Edwin T. Smith, the grantee in 1929 of the tax deed placed in controversy by this litigation.

[2] Patricia Lett, Edmund A. Fortier, Rosemary Mee, Virginia M. D'Entremont, Russell Fortier, O. Lee Fortier, Jeanne E. Fortier, Ernest C. Fortier, Virginia Howe, Wesley Gorman, Susan Washington. The first defendant named in the plaintiffs' pleading was Leona M. Savage, and in the Land Court the case proceeded under the caption "Margaret H. Krueger *vs*. Leona M. Savage." Savage died in 1978, prior to the filing of the plaintiffs' petition to foreclose the equity of redemption. The defendants claim as heirs of Leona M. Savage, as heirs or devisees of her heirs, or as purchasers from her heirs. Devine was the first defendant to file an answer.

Where a valuation list and notice of tax taking described certain property in Edgartown as containing thirty-nine acres and a tax deed referred to the property as containing twenty-nine acres, a Land Court judge acted within her discretion in admitting evidence to resolve the inconsistency and was warranted in concluding that "twenty-nine" was a scrivener's error. [403]

CIVIL ACTION commenced in the Land Court Department on January 10, 1979.

The case was heard by *Sullivan, J.*

*Paul J. Driscoll* for William J. Devine.

*John T. Ronayne (Stewart T. Herrick* with him) for the plaintiffs.

*James P. Hayes,* for Patricia Lett, submitted a brief.

KASS, J. Primarily, what the parties contest is the adequacy of a description of land in Edgartown, Martha's Vineyard, which was taken in 1928 for non-payment of taxes. That the description was not precise is beyond peradventure; the question is whether it was so insufficient as to constitute an irregularity which is "substantial" or "misleading" within the meaning of G. L. c. 60, § 37, as amended by St. 1976, c. 322. See *Springfield* v. *Schaffer,* 12 Mass. App. Ct. 277, 279 (1981). A judge of the Land Court determined that no substantial or misleading irregularity attended the tax taking and tax deed and that the tax sale was valid. We affirm.

After trial,[3] the judge made detailed and helpful findings of fact in support of a well crafted decision. Those findings we accept unless clearly erroneous, Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). A reviewing court will not conclude that such a degree of error has occurred unless "on the entire evidence [it] is left with the firm conviction that a mistake has been committed." *New England Canteen Serv., Inc.* v. *Ashley,*

---

[3] The judge confined the trial to the validity of the tax title, leaving to a further stage of proceedings whether the defendants were entitled to redeem and, if so, which of the defendants and on what terms. See *Franklin* v. *Metcalfe,* 307 Mass. 386, 387 (1940); *Boston* v. *Boston Port Dev. Co.,* 308 Mass. 72, 73 (1941). After the judge rendered her decision, several parties moved for entry of judgment pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). The judge made an express finding that there was no just reason for delay and judgment was entered on her decision.

372 Mass. 671, 675 (1977). See also *Norton* v. *West,* 8 Mass.
App. Ct. 348, 350 (1979), in which we observed in connection
with a confirmation proceeding that findings of a Land Court
judge were to be regarded with an even more accepting dispo-
sition, i.e., the findings were to stand if warranted on any
view of the evidence and all reasonable inferences therefrom.
The case at hand is not a confirmation proceeding, but it re-
quires the application of intellectual disciplines and learning
substantially similar to those which are brought to bear on a
confirmation matter. See *Devine* v. *Nantucket,* 16 Mass. App.
Ct. 548, 553 (1983).

We summarize the facts found by the judge. At the time
material, 1927-1929, the locus (referred to by the parties as
the "partition parcel") had devolved upon Leona M. Savage.
Earlier, in 1917, the valuation list of the assessors of Edgartown
included Savage as the owner of "land at So. Beach Tract 39
acres" and "58 lots at So. Beach Tract 6 acres 37,771 feet."
In 1918, the collector of taxes of Edgartown took the property
so described for non-payment of the 1916 and 1917 taxes.
Savage redeemed and received a release from the collector
dated December 18, 1924, which she recorded.

The next tax delinquency occurred in 1927. For three succes-
sive weeks, the collector advertised a notice of tax sale in the
Vineyard Gazette[4] thus: "Leona M. Savage — land at South
Beach consisting of a tract of 39 acres — tax year 1927,
$32.76." This was a modest sum. As a witness, a former "clerk
to all boards" in Edgartown, had testified, however, about land
values on Martha's Vineyard in the 1920's: "You give it away
. . . [s]old it $1 a lot and got it back on the tax [rolls]." After
World War II, the same witness testified, "the off-islander
came to the island" and things changed. "It's [i.e., land] meas-
ured down to the inch now."

On December 31, 1928, the land was sold at public auction
held at the town hall and on January 29, 1929, the collector
of taxes gave a tax deed to Edward T. Smith, describing it in
the deed as "Land at South Beach consisting of a tract of 29

---

[4] Notice was also posted in the town hall and at the Corner Market.

acres." The reduction in the tax deed of the parcel from thirty-nine to twenty-nine acres was found by the judge to be a scrivener's error.

1. *The adequacy of the description.* The judge reviewed with some care the evidence, documentary and testimonial, which she took into consideration. She then made a mixed determination of fact and of law that the description in the valuation list, in the notice of sale, and in the tax deed was sufficiently accurate to withstand attack. The judge found that "Edgartown at the brink of the Great Depression was a town with a population small in number[5] and a large undeveloped acreage. There was local awareness of the . . . ownership by Leona Savage . . . . The history of the chain of title to land of the South Beach Company as shown on [a plan received as exhibit 29][6] and of the description on the valuation list bear a striking resemblance. The correlation between the area assessed and the record title impels the conclusion that the thirty-nine acres (with the dwelling house and barn) represent the area set off to Gerald J. Savage [Leona's husband and a predecessor in the chain of title] in the partition . . . . The townspeople were familiar with the Savage property and aware of the partition piece. Mrs. Savage could have been in no doubt as to what was intended since she previously had redeemed the property from a prior taking for the non-payment of taxes. This case is unique to its time and locality and is a product of an era which has now passed."

The judge also found that drawing a more precise description would have required the town to hire a title examiner and surveyor at a time when the number of professional people on the island was limited. Although she thought the description in the valuation list and notice "minimal," the Land Court judge found that, in the circumstances, the description was

---

[5] Albert H. Prada, who was born in Edgartown in 1912, testified to a population of about 600.

[6] The South Beach Company was an enterprise of Gerald J. Savage, Leona's husband. The plan suggests the Savages envisioned in 1906 the potential of Martha's Vineyard as a haven for off islanders. By 1928, it may be, they were no longer willing to await their advent.

reasonably accurate and fairly designated the property for those interested. *Conners* v. *Lowell,* 209 Mass. 111, 120 (1911). *Franklin* v. *Metcalfe,* 307 Mass. 386, 389 (1940). *Lowell* v. *Boland,* 327 Mass. 300, 302 (1951). As to the capacity of the description in the valuation list and the notice of taking to inform the taxpayer of what land was to be sold, the judge inferred that capacity from Leona Savage's redemption of the property when it had been previously the subject of a tax taking. There was testimony that the description, in its short-hand way, would have described the partition parcel to islanders in the 1920's. Indeed, the descriptions of three other parcels advertised together with the locus as up for tax sale were equally minimal.

A finding that the rudimentary description here employed was sufficient — at least to the degree that its insufficiency was neither substantial nor misleading — may not have been inevitable, i.e., there was conflicting evidence. The determinative question, however, is regarded commonly as one of fact. *McHale* v. *Treworgy,* 325 Mass. 381, 385 (1950). *Lowell* v. *Boland,* 327 Mass. at 302. That question, i.e., "[w]hether an error or irregularity is substantial or misleading must be decided according to the circumstances of each case." *Fall River* v. *Conanicut Mills,* 294 Mass. 98, 100 (1936). *Springfield* v. *Schaffer,* 12 Mass. App. Ct. at 279. As we observed early in this opinion, we will not disturb factual determinations of the trial judge unless they are clearly erroneous.

We think the Land Court judge could, as she did, consider the rural and sparsely settled nature of Edgartown at the time of the tax title proceedings, and the information imparted to property owners even by crude descriptions. See *Galligan* v. *Everett,* 259 Mass. 94, 98 (1927). The judge could — and did — consider the taxpayer's relative sophistication (she and her husband held real estate for investment), the taxpayer's previous redemption, from which an inference might be drawn that the later failure to redeem was advised and not accidental, and the taxpayer's long acquiescence in the tax taking. Compare *Pass* v. *Seekonk,* 4 Mass. App. Ct. 447, 451 (1976). The taxpayer lived until 1978, i.e., long after the locus had become

extremely valuable. Had she not regarded the locus as taken for taxes, the taxpayer could be expected to have asked after the property and wondered why she had no longer received tax bills for it. When the validity of tax titles is put in question long after the event, it is appropriate for the judge, because of the difficulties of proof and the desirability of administrative finality, to weigh the factor of time against those making the challenge. See *Lancaster* v. *Foley,* 15 Mass. App. Ct. 967, 968 (1983). Here fifty years had gone by, and a significant number of conveyances out from the original tax deed had occurred.[7]

2. *Irregularity in demand.* Under St. 1909, c. 490, Part II, § 44, as appearing in St. 1915, c. 237, § 1 (the statute applicable at the time of the tax taking and a predecessor of G. L. c. 60, § 45, which retains the pertinent language), the tax deed is to state ". . . the name of the person on whom demand for the tax was made . . . ." Those challenging the tax deed protest that its recitals failed to state the date of the demand and the address to which demand was made. General Laws c. 60, § 45, does not require either. *Pass* v. *Seekonk,* 4 Mass. App. Ct. at 452, is not to the contrary. Nor is there a requirement that a collector's affidavit further validate a tax deed. *Southworth* v. *Edmands,* 152 Mass. 203, 208 (1890). Recitation in the deed that the collector had made demand for the unpaid taxes upon Leona Savage complied with § 45, and so served as prima facie evidence of a valid demand. Compare *Pass* v. *Seekonk, supra,* at 452. Contrast *Bartevian* v. *Cullen,* 369 Mass. 819, 823 (1976).

3. *Adequacy of notice.* There was proof of published notice. As to timely posting of notice, the recital by the collector to that effect in the deed has prima facie force under G. L. c. 60, § 45, and its predecessor noted above. The remainder of

---

[7] For other cases in which less than adequate descriptions have been thought acceptable, see: *Bemis* v. *Caldwell,* 143 Mass. 299, 300-301 (1887); *Roberts* v. *Welsh,* 192 Mass. 278, 280 (1906); *Lenox* v. *Oglesby,* 311 Mass. 269, 273-274 (1942); *Lowell* v. *Marden & Murphy, Inc.,* 321 Mass. 597, 599 (1947), cert. denied, 332 U.S. 850 (1948). Contrast *Williams* v. *Bowers,* 197 Mass. 565, 567 (1908); *Springfield* v. *Arcade Malleable Iron Co.,* 285 Mass. 154, 156 (1934).

the attack on notice concerns the description of the land, an issue with which we have already dealt.

4. *Validity of the tax deed.* The recitation in the tax deed that the locus was sold for discharge and payment of the unpaid taxes, with interest, legal costs and charges, together with an earlier recitation that the unpaid taxes were $32.76, satisfied the requirement of G. L. c. 60, § 45 (and its predecessor), that the tax deed state "the price for which the land was sold." The trial judge properly disregarded blanks in the margin in which the amounts of betterments and assessments could be written in. The locus consisted of wild land, and there is no suggestion of there having been any betterments or special assessments against it.

The land description in the tax deed compounds the weakness of the valuation and notice descriptions in that it refers to *twenty*-nine, rather than *thirty*-nine, acres. In view of the valuation list and notice descriptions that the locus contained thirty-nine acres, the Land Court judge acted within her discretion in admitting evidence to resolve that inconsistency, and there is ample support for her conclusion that "twenty-nine" was a scrivener's error.

*Judgment affirmed.*