DAVID ROBERTSON, trustee; NELSON C. BARTLETT & another, interveners, *vs*. TOWN OF PLYMOUTH.

Plymouth.   May 15, 1984. — September 28, 1984.

Present: GREANEY, C.J., ROSE, & DREBEN, JJ.

*Taxation,* Real estate tax: foreclosure of tax title, low value land.

In the circumstances, a Land Court judge did not err in concluding that a town's board of assessors had exercised reasonable diligence to determine the owners of a parcel of land before taking the property for nonpayment of taxes in accordance with the procedures governing the sale of low-value land. [594-597]

CIVIL ACTION commenced in the Land Court Department on November 18, 1980.

The case was heard by *Sullivan,* J.

*Paul J. Driscoll* for the plaintiff.

*Joseph J. Reardon* (*John C. Weld* with him) for the interveners.

*Robert L. Shea,* Town Counsel (*Leo D. Shea* with him) for the defendant.

DREBEN, J. This is another of the numerous occasions in this court in which a title has been challenged by William J. Devine or his successors in title. See *Lancaster* v. *Foley,* 15 Mass. App. Ct. 967 (1983); *Devine* v. *Nantucket,* 16 Mass. App. Ct. 548 (1983); *Hilde* v. *Dixon,* 16 Mass. App. Ct. 981 (1983); *Allen* v. *Batchelder,* 17 Mass. App. Ct. 453 (1984); *Krueger* v. *Devine, ante* 397 (1984). We also take judicial notice of the fact that there are additional disputes as to title pending in the Land Court in which William J. Devine is involved.

The parcel in question was taken by the town of Plymouth in 1961 for nonpayment of taxes. See G. L. c. 60, §§ 53 and 54. In 1963, the town foreclosed the prior owners' rights of

redemption under the procedure applicable to land of low value. See G. L. c. 60, § 79. The affidavit of the Commissioner of Corporations and Taxation filed pursuant to that statute stated that the value of the land did not exceed $1,000 and that facts essential to the validity of the tax title had been adequately established.[1] When the property was subsequently offered for sale at public auction, no adequate bid was received, and the town became the purchaser as set forth in a treasurer's deed of the parcel to the town dated December 13, 1963. The town thereafter constructed an elementary school on the property.

In 1979-1980, subsequent to the construction of the school, Devine obtained interests in the locus from eight different grantors under six separate deeds. These interests were transferred through mesne conveyances to the plaintiff as trustee.[2] The plaintiff commenced this action for a declaratory judgment in November, 1980.

The Land Court judge ruled that the assessors were not required in "the assessment of [this] property of marginal value to undertake the extensive search of the records to determine the person(s) to whom to assess the property." The court also noted, although laches or estoppel had not been pleaded, that "the complaint was filed only shortly before, the defendant would have been in a position to establish title by adverse possession and after it had changed its position." We affirm the judgment declaring that "the interest of the plaintiffs and their predecessors in title . . . ha[d] been validly taken" by the town.

---

[1] The parcel was assessed to Hannah C. Nelson in 1960. By instrument dated October 30, 1963, the town treasurer certified to the Commissioner of Corporations and Taxation that the parcel was taken for nonpayment of 1960 taxes, that demand was made on Hannah C. Nelson on March 27, 1961, that the parcel was advertised in the Old Colony Memorial on July 20, 1961, that notice of taking or sale was posted at the town office building and the tax collector's office on July 20, 1961, and that the taking was made on August 5, 1961.

[2] The record is silent as to the terms of the trust, and we do not know whether Devine or any of the grantors of the conveyances to him are beneficiaries. See the last paragraph of this opinion.

Prior to the town's taking in 1961, the most recent transfer of the parcel recorded in the Plymouth registry of deeds was in 1852. The only other recorded documents involving the locus were an 1892 conveyance of a portion of the parcel to a railroad, a document of taking by the Department of Public Works in 1952 listing as owner the heirs of Hannah G. [*sic*] Nelson, and a grant in 1952 of a drainage easement by one Roger Sherman. See note 3, *infra.*

*Hardy* v. *Jaeckle,* 371 Mass. 573, 579 (1976), sets forth the applicable principles of law. General Laws c. 59, § 11, as appearing in St. 1939, c. 175, provides, in relevant part: "Taxes on real estate shall be assessed, in the town where it lies, to the person who is the owner on January first, and the person appearing of record, in the records of the county . . . where the estate lies, as owner on January first, even though deceased, shall be held to be the true owner thereof." In construing the statute, the court in *Hardy,* at 580, pointed out that the board of assessors is charged not only with constructive knowledge of the contents of the records in the county's registry of deeds, but may also be charged with knowledge of the contents of records in the county's registry of probate. See also *Hilde* v. *Dixon,* 16 Mass. App. Ct. 981 (1983). The board must use "reasonable diligence" to try to determine the owner from these sources. *Hardy,* at 580.

Reasonable diligence, of course, varies with the circumstances. Thus in *Hardy,* at 580, the court held that the failure of the assessors to search the probate records for nineteen original owners of a parcel from 1821 to 1966 would not "permit" a finding that the board did not exercise reasonable diligence to determine the owners "appearing of record." The court said the Land Court judge was required to take judicial notice of the "enormity of the problem faced by the board." This was true despite the fact that G. L. c. 60, § 56, permits assessment to "one or more of the record owners."

As noted earlier, the most recent transfer of the parcel prior to the tax taking was in December, 1852, when one William Nelson became the owner of record. He died intestate in 1863 in Plymouth County leaving three children, William H. Nelson,

Sarah A.C. Nelson and Thomas L. Nelson. There are no records as to Sarah and Thomas in the Plymouth County registry of probate. A one-third interest in the locus passed to William's son, William H. Nelson, who died in Plymouth County testate in 1891, leaving his interest to his widow, Hannah C. Nelson, the person to whom the property was assessed in 1960. Hannah had died testate in 1914 in Plymouth County, and there is some evidence that in 1960 the town knew or at least had constructive knowledge that Hannah was dead. As set out in the margin,[3] if the town had searched the probate records in Plymouth County through succeeding estates, it would have found the names of more current owners of certain fractional interests derived from Hannah.

The interveners, who filed their complaint on June 22, 1982, do not take through Hannah, but take through Sarah A.C. Nelson,[4] whose probate was in Norfolk County and not in Ply-

---

[3] A search of Plymouth County probate records would have revealed the following: Hannah's estate passed by compromise to four persons, her sisters, Harriet D. Thayer and Laura A. Harlow, her brother Edmund Weston, and her nephew Charles H. Sherman.

a. A tracing of the Harriet D. Thayer branch would have revealed that she died intestate in 1925 survived by two daughters, Harriet and Anna, each of whom died intestate in 1931 and 1946. Anna's 1946 probate showed that she had a named nephew who lived on Farmer's Row, Groton, Massachusetts (outside the county). He would have owned a one-twelfth interest.

b. Laura A. Harlow died in California intestate in 1918. In 1919 a petition for license to receive a bank account in Massachusetts was filed by her daughter in Plymouth County, but the documents in the record on appeal do not disclose any address for her daughter.

c. Edmund Weston died in 1919 without any known probate.

d. Charles Sherman died testate in 1942, leaving all his property to his son, Roger. The latter died intestate in 1957, and the petition for probate lists seven cousins, six of whom lived in Plymouth County. There is no indication that their addresses are listed. (Although the judge found that the heirs of Charles would not appear from the Plymouth probate records, that finding appears erroneous and the town concedes as much.)

[4] Because of our conclusion that the interveners' claims are also barred, we need not decide whether any failure to assess persons taking through Hannah affected the validity of the tax taking in its application to the interveners, persons whose interests would not in any event have appeared from a search of the Plymouth probate records. See G. L. c. 60, § 37 (no tax title and no item included in a tax title shall be held invalid by reason

mouth. No probate records in Plymouth would have apprised the assessors in 1960 of the interveners' interests.

In the circumstances of this case the plaintiffs are not entitled to relief. The parcel was not assessed to anyone from 1933 to 1959. In 1960 the assessors placed the property on the tax rolls after a long gap. While the task of tracing the probate records from the conveyance to William Nelson in 1852 would not have been nearly as onerous as in *Hardy,* see *id.* at 581, we think the Land Court judge properly took judicial notice of "the enormity of the task which faced the assessors in returning the property to the tax rolls."

In this case, as in *Hardy,* land of low value was involved. As the court noted in *Guaranty Mortgage Corp.* v. *Burlington,* 385 Mass. 411, 419 (1982), it "would place too great a burden on cities and towns to require them to examine the title to every parcel of low-value land on which taxes have not been paid immediately before taking steps to collect the taxes or to sell the land." Compare *Mennonite Bd. of Missions* v. *Adams,* 462 U.S. 791 (1983), which did not involve low value land. The numerous fractional interests in this parcel of low-value land support the finding that the town used "reasonable diligence" in assessing the parcel to Hannah.

There are, moreover, additional factors supporting the judgment. Not only does reasonable diligence vary with the circumstances, but a court, when faced with a title challenge, may also consider the persuasiveness of plaintiff's claim. We have noted that "[w]hen the validity of tax titles is put in question long after the event, it is appropriate for the judge . . . to weigh the factor of time against those making the challenge." *Krueger* v. *Devine, ante* at 402. "[A] taxpayer should know that the city or town will eventually sell his property if the taxes are not paid." *Guaranty Mortgage Corp.* v. *Burlington,* 385 Mass. at 419. We have also said that a judge may consider

of any error or irregularity which is neither substantial nor misleading). See also *Gaunt* v. *Arzoomanian,* 313 Mass. 38, 40 (1943). Also compare cases such as *Foreclosure of Tax Liens, etc.* v. *Young,* 106 Wis. 2d 244, 251 (1982), with such cases as *Nugent* v. *Lindsley,* 100 N.J. Eq. 87, 90 (1926).

the claims less persuasive where the owners over the years have attached little significance to them and only begin to show interest when "persuaded to do so by a third party who had agreed to pay their expenses." *Lancaster* v. *Foley,* 15 Mass. App. Ct. 967, 969 (1983). Here the claims only emerged after a flurry of deeds to a third party who, as it happens, is the same person involved in *Krueger* v. *Devine, supra,* and *Lancaster* v. *Foley, supra.* In sum, we see no reason to disturb the trial judge's conclusion that the challenge to the town's diligence was insufficient.

In view of the spate of litigation spawned by William J. Devine, and in view of our previous suggestion that these cases may involve "champertous antecedents," *Allen* v. *Batchelder,* 17 Mass. App. Ct. at 459, see also *Lancaster* v. *Foley,* 15 Mass. App. Ct. at 970, we would not consider it inappropriate for a judge, in his or her discretion, in cases involving similar title challenges by or through Devine, to hold evidentiary hearings to determine if the claims should be barred by reason of champerty or on principles analogous thereto. See *Lott* v. *Kees,* 276 Ala. 556, 557 (1964). Cf. G. L. c. 221, § 41. See generally 14 Williston, Contracts § 1715 (3d ed. 1972). As stated in *Allen* v. *Batchelder,* at 459, the issue of champerty "is a subject to which a court may turn its attention on its own initiative." See *Sherwin-Williams Co.* v. *J. Mannos & Sons,* 287 Mass. 304, 312 (1934); *Baskin* v. *Pass,* 302 Mass. 338, 342 (1939).

*Judgment affirmed.*