CAROL TUTTLE CHRISTIAN & others[1] *vs.* ROBERT F. MOONEY
& another;[2] WALTER BEINECKE, JR.,
third-party defendant.

Suffolk. April 9, 1987. — August 17, 1987.

Present: WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Laches. Fraud. Notice. Taxation,* Real estate tax: foreclosure of right of
redemption. *Due Process of Law,* Notice. *Land Court,* Vacation of
judgment, Registration proceedings. *Real Property,* Foreclosure of tax
title; Registered land: review of judgment of registration. *Trust,* Con-
structive trust.

In a land court proceeding, plaintiffs had not, by reason of laches, lost any
right to challenge a 1981 registration of title to a certain parcel of land
on account of an earlier tax taking and proceeding to foreclose rights
of redemption, where the plaintiffs and their predecessors in interest did
not know and would not reasonably have been expected to know of the
tax taking or of the foreclosure proceeding. [760]

Discussion of due process considerations relating to tax foreclosure proceed-
ings and to proceedings under G. L. c. 60, § 69A, to vacate a judgment
of foreclosure. [760-762]

No evidence in a Land Court proceeding challenging a 1981 registration
of title supported the plaintiffs' contention that the judgment of registra-
tion was obtained by fraud on the Land Court, where it was found that
the judge who authorized the final registration decree was fully aware
of deficiencies in a title examiner's report in a previous foreclosure
proceeding, and thus the judge could not have been misled by any
misstatements therein. [762-763]

In a land court proceeding, no basis appeared for holding an arm's-length
purchaser of certain property, taken for nonpayment of taxes and on
which the equity of redemption had been foreclosed, to be a constructive
trustee for the benefit of certain plaintiffs, where the purchaser had no

---

[1] The other original plaintiffs were: Russell Tuttle, Ruth Dietrich Tuttle,
Dorothy Stetson, George T. Mascott, Mary Seymour, Florence Anderson,
Robert Cleaves, Jr., Edgar D. Gould, Jr., Agnes Conwell Quinlan, William
J. Devine, Zelwyn A. Aarons, Benjamin N. Page, Virginia P. Hart, Melba
W. Norvell, and Lester B. Woodbury. Several original plaintiffs have since
died and have been replaced by successors in interest.

[2] E. Garrett Bewkes.

knowledge at the time of the purchase that the plaintiffs would claim ownership or that the basis of their claims would be alleged fraud in a title examiner's reckless or wilful disregard of the facts in certifying title, and where, in any event, there was no unjust enrichment. [763-764]

This court declined to recognize a common law theory of liability, in the absence of any statutory right to seek damages, for a title examiner's reckless disregard of information of record in 1966, where the title examiner's failure to conduct a proper title search was not intended to defraud the Land Court in subsequent proceedings to foreclose the equity of redemption on a certain parcel of land, although it resulted in cutting off the claims of persons who asserted an interest in the property through descent or devise based on conveyances made in 1874. [764-765]

No viable claim for damages was stated by plaintiffs whose interests in certain real property were harmed by the defendant title examiner's reckless disregard of information of record, amounting to fraud on a court, where the defendant did not and could not benefit from his alleged fraud. [766]

CIVIL ACTION commenced in the Superior Court Department on January 27, 1982.

On transfer to the Land Court Department, the case was heard by *George C. Keady, Jr.,* J., sitting under statutory authority.

The Supreme Judicial Court granted a request for direct appellate review.

*Jerry L. Mashaw* of Connecticut & *Jack R. Pirozzolo* (*Richard E. Bennett* with them) for William J. Devine.

*Bruce A. Issadore* for Agnes Conwell Quinlan & another.

*Paul Killeen* (*Theodore L. Tillotson* with him) for E. Garrett Bewkes.

*Jacob J. Locke* (*Robert G. Conley* with him) for Robert F. Mooney.

*Kevin G. Murphy* for Marion L. Jewell.

WILKINS, J. This case concerns the ownership of particular lots shown on an 1874 plan of land of one Winchester Veazie and located on the south coast of Nantucket in an area described as Share 10 of Smooth Hummocks (Share 10). This case also concerns the asserted liability of Robert F. Mooney, who in 1966 acted as title examiner in connection with a Land Court

proceeding which purported to foreclose all rights of redemption in Share 10 following a taking for nonpayment of taxes.

In 1967, a Land Court judge, accepting Mooney's opinion as title examiner that record title to the land remained in Winchester Veazie, entered a decree purporting to cut off all rights of redemption. We now know that, among other things, Mooney overlooked two 1874 deeds by Veazie to one D. Morton Fox conveying the lots involved in this action. Each plaintiff, other than Devine, has asserted an interest in particular numbered lots in the subdivision through descent or devise, or both.[3] Devine discovered Mooney's errors by reading certain Land Court records. He located the other plaintiffs, acquired a one-half interest in their claims, and arranged for this proceeding to be brought at his expense.

In 1963, for the first time in at least sixty years, the town assessed taxes against Share 10 in the name of "Winchester Vezie [*sic*] et al," valuing the land at $10. Understandably, the taxes went unpaid, and in February, 1964, the collector of taxes took Share 10 for nonpayment of taxes. In March, 1964, the town's interest was assigned to John J. Gardner, II, for $15.38. Gardner was clerk of the Nantucket board of assessors. About two years later Gardner retained Roy E. Sanguinetti to foreclose the tax title. Sanguinetti was Nantucket's town moderator and town counsel. The petition for foreclosure and the notice of the foreclosure named "Winchester Vezie [*sic*]" as the only interested party. In connection with the tax foreclosure action, the Land Court appointed Mooney as title examiner. Mooney, who was paid a fee of $35 for his services, filed a report, dated June 24, 1966, in which he stated that Veazie was the last known owner of the locus.

The trial judge concluded that Mooney was negligent in his title examination. He missed various deeds by Veazie of portions of Share 10 to various persons, including Fox. The

---

[3] For the purposes of this appeal we shall assume, without deciding, that each plaintiff has established that the person from whom he or she claims his or her interest was a person to whom Fox conveyed particular lots in 1874 or 1875 and that each plaintiff has acquired an interest in particular lots so conveyed.

pages of the 1862-1875 grantor index for grantors whose names began with the letter "V" became full sometime in 1874 and at the bottom of the last page initially designated for the letter "V," long before 1966, someone had written "see Page 230." If Mooney had noted and pursued that instruction, as the judge concluded he reasonably should have, he should have found reference to the conveyances on which the plaintiffs base their respective claims.[4]

On April 4, 1967, the Land Court entered a final decree in the tax foreclosure case "forever foreclosing and barring all rights of redemption." In May, for less than $100, Gardner conveyed Share 10 to Sanguinetti, as a trustee, and three weeks later Sanguinetti conveyed Share 10 to the defendant Beinecke for $16,500 in an arm's-length transaction. Beinecke, following his practice in connection with other Nantucket land, decided to register title to Share 10, and he retained Mooney to handle the matter. On October 16, 1968, Mooney filed a petition to register and confirm title to Share 10. The appointed title examiner made a report in 1969 which commenced with and relied on the 1967 tax title foreclosure proceeding. He gave a report favorable to registration of title in Beinecke. In May, 1976, the title examiner filed a supplemental report which, for purposes of this case, contained no changes but did note irregularities of Sanguinetti as trustee.

While the registration case was pending, certain Nantucket tax taking procedures came under investigation. In July, 1978, Mooney, who was then town prosecutor, withdrew as counsel for Beinecke in the registration proceeding because in June, 1978, the town had brought an action against Beinecke alleging that the conveyance of Share 10 to Beinecke was voidable because Gardner and Sanguinetti had violated the conflict of interest statute in their dealing with the land.[5] The town's action

[4] Mooney also failed to note two deeds from Veazie of lots in the subdivision noted in subsequent consolidated grantor indexes under the letter "V." Neither of these overlooked deeds is relevant to the plaintiffs' asserted interests. The judge also ruled that Mooney should have found Veazie's subdivision plan of Share 10.

[5] On July 28, 1980, the town also moved to reopen the title examination in Beinecke's registration proceeding. It filed an affidavit, by Stephen

came to this court on appeal following allowance of Beinecke's motion to dismiss it. *Nantucket* v. *Beinecke,* 379 Mass. 345 (1979). Following this court's opinion, there was a Land Court trial, and in March, 1981, a determination that the town's action was "time barred." The Land Court judge noted in her decision that "there are questions which now exist in relationship to the title [to Share 10] which will have to be explored ultimately by this Court."

In 1979 Beinecke sold Share 10 to the defendant Bewkes for $150,000, subject to a purchase money mortgage of $145,000. At his option Bewkes could rescind the transaction (except for the original $5,000 payment) if Beinecke were unsuccessful in procuring registration of title to Share 10. In July, 1981, several months after the town lost its Land Court action seeking recovery of Share 10, Bewkes became a substitute petitioner in the registration case. Mooney, on direction from someone in the recorder's office at the Land Court, submitted a second supplemental title examination covering the period from 1967 to July 1, 1981, indicating that title was in Bewkes. In September, 1981, Bewkes paid the balance due to Beinecke and a broker's commission of $15,000. On December 9, 1981, the Land Court issued a decree of registration and confirmation declaring Bewkes to be the owner in fee simple of all of Share 10.[6]

In the meantime, Devine had been at work. In 1980 he discovered in Land Court records DeYoung's affidavit listing the errors in Mooney's 1966 title examination, and commenced the task of identifying people who might be successors in title to the grantees listed in Fox's 1874 and 1875 deeds of portions of Share 10. By early 1981 he had located a number of such people. In exchange for a conveyance of one-half of each person's interest, Devine agreed to underwrite the cost of the

---

DeYoung, a title examiner, in which, according to the trial judge's findings, "all of the material errors relevant to Mooney's title report in the tax foreclosure case were set forth in detail." It appears that the motion was never acted upon.

[6] The trial judge found that before the Land Court judge entered the 1967 decree, he knew of the "deficiencies" in Mooney's 1966 title examination.

litigation if it were unsuccessful. By September, 1981, Devine had agreements with six original plaintiffs and a deed from one of them.

This action was commenced on Janaury 27, 1982, within two months of the entry of the decree in the registration case. The second amended complaint sought a determination that Bewkes held certain lots in Share 10 in a constructive trust for the plaintiffs; that Bewkes be ordered to convey certain numbered lots to particular plaintiffs as tenants in common; that Mooney be ordered to pay damages; and that the registration decree of December 9, 1981, be declared void and without force and effect.

After a trial involving numerous exhibits, the trial judge, sitting in the Land Court by designation, made extensive and thorough findings of fact. He then ruled that Devine could not assert his claim because his agreements with the other plaintiffs were champertous and unenforceable.[7] He ruled that certain plaintiffs had established that they were entitled to assert rights as successors to one or the other of Fox's grantees, and that other plaintiffs had not. He concluded that the 1963 tax assess-

---

[7] This ruling was wrong. "That a defendant is being sued under champertous agreement is not a defense to that action." *Pupecki* v. *James Madison Corp.,* 376 Mass. 212, 220 (1978). There is nothing improper in a person's acquiring an interest as a tenant in common in land of another or in searching for interests that others may have in land and not know of. We need not discuss the question whether the agreements between Devine and other plaintiffs were champertous. Devine argues that the denial of his right to assert an interest in this case impermissibly intruded on his constitutional right of free commercial speech. The characterization of Devine as a "bounty hunter in troubled titles" (*Allen* v. *Batchelder,* 17 Mass. App. Ct. 453, 459 [1984]) does not answer the question of the validity of agreements he may make with discovered heirs and legatees. Also, we think that generally a judge should not undertake on his or her own motion to investigate whether a champertous arrangement has been made. See *Robertson* v. *Plymouth,* 18 Mass. App. Ct. 592, 597 (1984). If there appears to have been an ethical violation, a judge should refer the matter to the Board of Bar Overseers.

At a posttrial hearing counsel acting for all plaintiffs other than Devine and Jewell informed the trial judge that all but one of Devine's coplaintiffs agreed to stand behind his or her agreement with him and not to rely on any possible right to repudiate his or her agreement on the ground of champerty.

ment for Share 10 was invalid but that the 1967 decree fore-
closing all rights of redemption in Share 10 was unassailable
pursuant to G. L. c. 60, § 69A (1984 ed.), which, in the
circumstances, purports to bar a proceeding to vacate a fore-
closure decree brought more than one year after entry of the
final decree. He also appears to have decided that the plaintiffs
were barred by laches in their attempt to challenge the 1967
foreclosure decree. He further concluded that the registration
of title in Bewkes's name was not obtained by fraud and that
under G. L. c. 185, § 45 (1984 ed.), a registration decree
could only be vacated on proof of fraud. He ruled that neither
Beinecke, nor Bewkes committed fraud on the Land Court and
that Beinecke, whom Mooney represented for ten years in the
registration case, was not chargeable with imputed knowledge
of the fraud which Mooney committed on the Land Court in
his 1966 title examiner's report. The judge thus ruled that the
registration of title in Bewkes should stand and that there was
no basis for imposing a constructive trust on Bewkes of any
portion of the registered land.

The judge then turned to the question of Mooney's liability
to the plaintiffs for fraud. He concluded that the claims against
Mooney were not time barred. He ruled that Mooney's 1966
breach of duty to the Land Court was fraud in the sense, not
of an intention to defraud, but as "such wilful disregard of the
facts as to be tantamount to fraud." The judge held that Mooney
was liable in fraud to those plaintiffs who had established their
standing, and he assessed damages (totaling $75,000) based
on the fair market value of their interest at the time this proceed-
ing was commenced.[8]

Mooney has appealed, as have various plaintiffs, including
Devine. We allowed Devine's request for direct appellate re-
view. We need not decide many issues raised by the various
appeals. We conclude that (1) the judge erred in this apparent
conclusion that the plaintiffs were barred by laches and (2)
there is a difficult question, we need not decide, whether the

---

[8] Because Bewkes prevailed against all plaintiffs, the judge dismissed
Bewkes's third-party action against Beinecke.

judge was correct in holding that the plaintiffs' rights are barred by G. L. c. 60, § 69A. We agree with the judge, however, that the registration decree cannot be successfully assailed because such a decree may be reopened only on proof of fraud on the Land Court in obtaining that decree and there was no such fraud. There is no basis for holding that Bewkes holds any of Share 10 in constructive trust for any plaintiff. We further conclude that, whatever Mooney's liability to the plaintiffs might be for negligence, he is not liable to them for fraud in connection with errors in his 1966 title examiner's report.

1. We consider first the question whether the decree of registration of title may be reopened and whether, in any event, Bewkes should be ordered to hold any land in constructive trust for any plaintiff.

The trial judge concluded that the plaintiffs had lost their right to challenge the title registration proceeding because, as we read his opinion, they were guilty of laches and because they or their predecessors had lost their rights because of the 1967 decree in the tax foreclosure proceeding. The judge based his laches ruling on *Lancaster* v. *Foley,* 15 Mass. App. Ct. 967 (1983), suggesting that, as in the *Lancaster* case, the delay in challenging the foreclosure was not the result of excusable neglect. This laches point has no merit. Unlike the parties in interest in the *Lancaster* case (see *id.* at 968), the plaintiffs and their predecessors in interest did not know of the tax taking or of the foreclosure proceeding and would not reasonably have been expected to know of them.

The judge's reliance on G. L. c. 60, § 69A, as a bar to any challenge to the decree foreclosing all rights of redemption is supported by the language of § 69A. Section 69A states that a decree barring all rights of redemption may be vacated only in a proceeding commenced "within one year of the final entry of the decree." If, however, the proceedings, including the town's failure to assess the record owners and to notify them of the foreclosure proceeding, constituted a denial of due process of law, the purported foreclosure could not be effective. See *Sharon* v. *Kafka,* 18 Mass. App. Ct. 541, 543-544 (1984)

(circumstances could raise a due process problem justifying an order vacating a § 69A decree of foreclosure).[9]

The plaintiffs raised this not insignificant due process point before the trial judge, who did not discuss it in his decision. Failure to give notice to a mortgagee of record, by personal service or by mail, of a proceeding to sell the mortgaged property for nonpayment of taxes is a denial of due process of law. *Mennonite Bd. of Missions* v. *Adams,* 462 U.S. 791, 799-800 (1983) (*Mennonite*).[10] Here, of course, the interests of the plaintiffs or their predecessors in title living on the date of the 1967 tax foreclosure decree, as the case may be, were not of record. The *Mennonite* opinion does not tell us how far due process of law may require notice to record owners of land (such as the plaintiffs' predecessors in title), who apparently abandoned their interests in the land and whose names are shown on deeds the most recent of which is more than ninety years before the date of a foreclosure decree. Practical considerations, as well as unknown owners' due process rights, have to be relevant in determining how far a municipality must search (whether redemption of the land is foreclosed in the normal course [*Hardy* v. *Jaeckle,* 371 Mass. 573 (1976)] or foreclosed under the procedure applicable to land of low value [see G. L. c. 60, § 79 (1984 ed. & 1985 supp.)]; *Robertson* v. *Plymouth,* 18 Mass. App. Ct. 592 [1984]). In measuring the plaintiffs' due process rights it may be material that their original predecessors in title abandoned the property and the plaintiffs acquired whatever interests they have as a windfall.

If Bewkes was not entitled to the protection of § 69A, the question then would be whether the tax foreclosure proceedings

---

[9] Failure to assess readily discoverable record owners does not comply with statutory requirements. Cf. *Hardy* v. *Jaeckle,* 371 Mass. 573, 580 (1976) (assessment should be to owner of record of vacant land except where, as here, the task was practically impossible). We shall assume that § 69A undertakes, as far as constitutionally permissible, to excuse such an error.

[10] The due process considerations stated in the *Mennonite* case cast some doubt at least on the reasoning in *Guaranty Mortgage Corp.* v. *Burlington,* 385 Mass. 411, 419 (1982) (concerning the sale of low value land for nonpayment of taxes of which mortgagees of record were not notified).

were invalid because notification requirements were not followed. Here, the record owners were ascertainable, and the town's failure to assess taxes to them, to make a tax taking from them, and to list them in any notice concerning the foreclosure proceeding could well have been "substantial" or "misleading," thus invalidating the tax title. G. L. c. 60, § 37 (1984 ed.). See *Fall River* v. *Conanicut Mills,* 294 Mass. 98, 99-100 (1936).

All these considerations bearing on the validity of the tax foreclosure proceedings and the capacity of § 69A to cut off the plaintiffs' rights present issues which we need not decide in this case.. We have discussed them to explain why § 69A does not furnish an easy answer to the question of the plaintiffs' rights against the land. We need not decide these questions because there is another, far clearer reason for concluding that the plaintiffs had no valid interest in the land, once a decree was entered in the registration case.

When "a judgment of confirmation and registration" is entered pursuant to G. L. c. 185, § 45, and becomes final, it is "conclusive upon and against all persons" and "shall not be opened by reason of the absence . . . of any person affected thereby, nor by any proceeding . . . for reversing judgments or decrees; subject, however, to the right of any person *deprived of land,* or of any estate or interest therein, *by a judgment* of registration *obtained by fraud* to file a complaint for review within one year after the entry of the judgment, provided no innocent purchaser for value has acquired an interest" (emphasis supplied).[11]

---

[11] This proceeding was commenced within one year of the date of judgment of registration.

Neither Bewkes nor Beinecke would be innocent purchasers for value because, assuming for the purposes of our discussion, that the tax taking and the § 69A foreclosure proceeding were ineffective and nullities, Bewkes and Beinecke would have had constructive notice of the record title of the plaintiffs' predecessors in title (and would have acquired no valid interest in the land). Section 45, of course, refers to an innocent purchaser who acquires an interest after the entry of judgment, a circumstance not applicable to Beinecke or Bewkes.

There was no evidence that would have supported a ruling that the judgment of registration was "obtained by fraud." The plaintiffs assert that Mooney perpetrated a fraud on the Land Court. The judge ruled that Mooney committed no fraud on the Land Court in connection with the title registration (but had committed fraud in connection with the 1967 tax foreclosure proceeding, a matter we consider later). We need not decide whether, in connection with the registration proceeding, Mooney made any statements of fact concerning title "with such wilful disregard of the facts as to be tantamount to fraud." *State St. Bank & Trust Co.* v. *Beale,* 353 Mass. 103, 104 (1967). See *Kozdras* v. *Land/Vest Properties, Inc.,* 382 Mass. 34, 43 (1980).

There was no fraud on the Land Court because, as the judge found, "the Justice of this Court who authorized the final registration decree knew about the deficiencies attributable to Mooney's work before that Justice entered the registration decree." The trial judge based his finding on the statements about title made in the March 26, 1981, Land Court decision in the conflict of interest case involving title to Share 10 and on the filing in the registration case on July 28, 1980, of a motion to reopen the title examination "supported by an affidavit of one, Stephen DeYoung, a title examiner, in which affidavit all of the material errors relevant to Mooney's title report in the tax foreclosure case was set forth in detail." Thus, whatever misstatements Mooney may have made, they were of no significant effect because the judge who authorized entry of the registration decree was not misled by them.[12] The plaintiffs' briefs do not challenge the trial judge's findings that the judge in the registration proceeding knew of Mooney's mistakes. The judge in the registration proceeding may have made an error of law, perhaps in relying on § 69A as a bar to the interests of the plaintiffs and their predecessors, but the registration decree was not obtained by fraud.

We see no basis for holding Bewkes to be a constructive trustee for any of the plaintiffs. He had no knowledge of their

---

[12] The plaintiffs do not challenge on due process grounds the absence of notice to them of the registration proceeding.

claims or of Mooney's alleged fraud. There has been no unjust enrichment. See *Barry* v. *Covich,* 332 Mass. 338, 342 (1955).

2. There remains the question of the plaintiffs' right to judgment against Mooney for fraud. We are not concerned here with claims of malpractice expressed in terms of negligence.[13]

We are doubtful whether Mooney's conduct in 1966 amounted to that kind of misrepresentation that is an essential element of fraud, that is, a misrepresentation of an existing fact made with knowledge of the falsity of the misrepresentation or with reckless disregard of the actual facts. See *Kozdras* v. *Land/Vest Properties, Inc.,* 382 Mass. 34, 42-43 (1980). Certainly Mooney was negligent. The trial judge concluded that Mooney's 1966 breach of duty to the Land Court constituted fraud in the sense of such a wilful disregard of the facts as to amount to fraud. In assessing whether Mooney's disregard was reckless or only negligent, it may be relevant that his omission did not benefit him or any client, unlike the situations in *State St. Bank & Trust Co.* v. *Beale,* 353 Mass. 103 (1967), and *Kozdras* v. *Land/Vest Properties, Inc.,* 382 Mass. 34 (1980). The evidence does not show that Mooney disregarded any fact known to him about Share 10 or its record title that should have put him on notice. He did, however, fail to conduct a proper title search, missing a reference to a page on which

---

[13] The trial judge denied the plaintiffs leave to amend their complaint to alleged negligence, and they do not challenge that ruling on appeal. He rejected the plaintiffs' claim that Mooney owed them a fiduciary duty and again the plaintiffs do not argue otherwise on appeal. We thus are not concerned with the question whether a title examiner has immunity of some type from liability for the consequences of his negligence. Nor need we deal with the effect of the Massachusetts Tort Claims Act (G. L. c. 258 [1984 ed.]), on an examiner's liability, or with whether before the substantial revision of the Massachusetts Tort Claims Act a title examiner might not have been liable for nonfeasance, as opposed to misfeasance. See *Narine* v. *Powers, ante* 343, 346 (1987). Mooney makes no claim here that he is entitled to immunity as to any fraud that may have been found.

We accept as correct the judge's ruling that the statute of limitations does not bar claims which the plaintiffs assert against Mooney for his conduct. They commenced this action within two years of the date when Devine first learned of Mooney's errors, which in the circumstances is the earliest time at which the statute of limitations could have begun to run. See *Hendrickson* v. *Sears,* 365 Mass. 83, 90 (1974).

crucial deeds out from Veazie were noted (and similar information in grantor's indexes for subsequent periods). It is doubtful that Mooney had notification of possible facts whose existence he failed to pursue so as to be fraud. Even if we assume, however, for the purposes of this case that the level of incompetence shown in Mooney's performance of the 1966 tax examination amounts to reckless disregard of actual facts, the plaintiffs may not recover.

We are dealing with fraud committed in 1966. As we have said, Mooney did not commit fraud on the Land Court in connection with the title registration proceeding. The judge's discussion of Mooney's tort liability in fraud is based on an unsupported assumption that the plaintiffs may recover for fraud committed not on them but on the Land Court in connection with the 1966-1967 proceeding to foreclose all rights of redemption.[14] Neither § 69A nor any other statute grants a person aggrieved by a judgment obtained by fraud on the Land Court in a tax foreclosure proceeding the right to seek damages on the basis of that fraud. We have seen that, in matters involving registration of land (G. L. c. 185, § 45), the Legislature has acknowledged the right of an aggrieved person to pursue a private remedy for fraud on the Land Court in procuring a decree. See *State St. Bank & Trust Co*. v. *Beale,* 353 Mass. 103 (1967). We grant that the Land Court could "entertain an independent action . . . to set aside a judgment for fraud upon the court" (Mass. R. Civ. P. 60 [b], 365 Mass. 828 [1974]), at least if it were brought within one year (G. L. c. 185, § 45). We decline, however, to impose common law liability for fraud on a title examiner who did not intentionally defraud the Land Court, but who recklessly disregarded information of record, where the persons seeking damages (and their predecessors) never relied on any fraudulent misrepresentation.

---

[14] Surely no plaintiff or plaintiffs' predecessor in title, having an interest in the land at the time of the foreclosure proceeding, ever relied on any representation Mooney made. Because they and their predecessors in title never relied on anything Mooney represented, he cannot be liable to them for traditional common law fraud. See *Graphic Arts Finishers, Inc*. v. *Boston Redevelopment Auth.,* 357 Mass. 40, 44 (1970).

The plaintiffs make a general claim of fraud by Mooney, but they do not focus on errors in his 1966 title examination as the sole basis for liability. They cite no case in which a defendant who did not and could not benefit from his fraud on a court has been held liable for money damages to persons whose interests were harmed by the defendant's reckless disregard of facts constituting the fraud.[15]

3. Those portions of the judgment ordering recovery by certain plaintiffs against Mooney are vacated. A judgment shall be entered reflecting judgment for Mooney against each plaintiff, and indicating, as before, that judgment should be entered in favor of Bewkes against all plaintiffs, and in favor of Beinecke as third-party defendant.

*So ordered.*

---

[15] We note that the plaintiffs have argued, and we have assumed for the purposes of this case, that the foreclosure proceeding was a nullity and the 1967 decree did not foreclose any of their rights. If that is so, the plaintiffs were not harmed by any misrepresentations Mooney made to the Land Court in 1966. Their title would have been unaffected by the foreclosure decree, and, if they had joined the registration proceeding seasonably, they could have preserved their rights.